W. M. GOODSON v. F. M. FITZGERALD.

Decided November 21, 1905.

**1.—Grant—Ambiguous Field Notes—Records of Land Office.**

The field notes in a grant were incomplete, or did not close. The grant contained the following reference: "Of which the boundaries are defined on the map and in the notes of survey returned by the surveyor as is seen in this title." Held, permissible to refer to the original field notes and map to cure the ambiguity or omission in the description.

#### 2.—Field Notes—Clerical Error.

The use of the word "diameters" for "varas" in one of the calls of the field notes being manifestly, under all the facts, the result of inadvertence, was harmless.

#### 3.—Boundaries—Dignity of Calls.

Rules as to the dignity of calls in determining boundaries are merely rules of evidence, and are relative in their application. Calls of the least dignity by the aid of other facts sometimes prevail over calls of the highest dignity. The purpose of the inquiry and the end to which all evidence is addressed in a boundary suit is to find the footsteps of the original surveyor. Facts considered, and held to show that a call in one grant for a marked corner and line of another grant should yield to a call for distance.

#### 4.—Marked Line.

In order for a marked line to overcome a call for course and distance it must be identified on the ground. If marked when the survey was made subsequent destruction of the marks is immaterial. It need not be marked throughout its length.

#### 5.—Calls of Junior Survey.

The calls of a subsequent survey for the lines and corners of a prior survey are not admissible in evidence unless it is shown that the latter surveyor had knowledge of the lines and corners of the prior survey.

#### 6.—Boundaries—Hearsay.

Hearsay testimony is admissible as to the declarations of an owner in possession as to his boundaries, ante litem motam, the declarant being dead.

#### 7.—Opinion of Witness.

Two sets of meandering field notes being in evidence, the testimony of a witness to the effect that they correspond very well was inadmissible.

#### 8.—General Reputation—Boundary.

Evidence of general repute and recognition of the location of an old line is admissible.

Appeal from the District Court of Chambers County. Tried below before Hon. L. B. Hightower.

*H. E. Marshall,* for appellant.—Calls must be made to close. Den v. Cunningham, Mart. and Y. (Tenn.), 73; McNairy v. Hightour, 2 Overt. (Tenn.), 302; White v. Hembree, 1 Overt. (Tenn.), 529; Eubank v. Harris, 1 Spears, L. (S. Car.), 183.

It is only when title does not describe land by metes and bounds that original field notes can be considered a part of description of land granted, on question of title. Irwin v. Bevil, 80 Texas, 332.

In conflict between patent and entry, as to description of land, the patent controls. Bowers v. Dickenson, 30 W. Va., 737; Wheeler v. Cyst, 21 S. W. Rep., 1052.

Because some of the deeds in plaintiff's chain of title called for distances in "diameters" said deeds were void for patent ambiguity, as "diameters" is not a unit of measure known to law or otherwise. Milby v. Reagan, 41 S. W. Rep., 372; Ellis v. LeBow, 71 S. W. Rep., 576; Harrison v. Hahn, 95 N. C., 28.

The judgment of the court was contrary to the law and the evidence. Gerald v. Freeman, 68 Texas, 201; Davidson v. Pickard, 56 S. W. Rep.,

608; Gregg v. Hill, 82 Texas, 405; Fagan v. Stoner, 67 Texas, 287; Cottingham v. Seward, 25 S. W. Rep., 797; Booth v. Strippleman, 26 Texas, 436; Reast v. Donald, 84 Texas, 648; Aransas Pass Co. v. Flippen, 29 S. W. Rep., 813; Cox v. Finks, 41 S. W. Rep., 95; Bingham v. McDowell, 69 Texas, 102; Ratliff v. Burleson, 26 S. W. Rep., 1004; Duff v. Moore, 68 Texas, 270.

The court erred in holding that the north line of the Henry Griffith was an artificial or well marked line at the date of survey and location of the C. C. P. Welch survey, because the evidence thereof is wholly insufficient. Fagan v. Stoner, 67 Texas, 287; Boon v. Hunter, 62 Texas, 590; Tippen v. McCampbell, 26 S. W. Rep., 647; Schaffer v. Berry, 62 Texas, 714; Moore v. McCown, 20 S. W. Rep., 1112; Reast v. Donald, 84 Texas, 648; Tucker v. Smith, 68 Texas, 473; DeLeon v. White, 9 Texas, 607: Phillips v. Ayers, 45 Texas 607; Williamson v. Winslow, 84 Texas, 376; Randall v. Gill, 77 Texas, 354; Evans v. Green, 21 Mo., 170.

The court erred in holding that the land in controversy is included in the Welch grant, and that the call for the Welch field notes to go to the Henry Griffith north line, in law, carries the Welch to the Griffith north line, because the evidence shows that the surveyor of the Welch, in calling for the Griffith, was mistaken as to being at the Griffith north line. Aransas Pass Co. v. Flippen, 29 S. W. Rep., 813; Morgan v. Mowles, 61 S. W. Rep., 155; Cox v. Finks, 41 S. W. Rep., 95; Burnett v. Burriss, 39 Texas, 504.

The burden of proof is on plaintiff to show that the land in controversy is included in his grant. Scott v. Pettigrew, 72 Texas, 329; Jones v. Andrews, 72 Texas, 18; Fagan v. Stoner, 67 Texas, 287; Phillips v. Ayers, 45 Texas, 607; Duff v. Moore, 68 Texas, 270; Williams v. Winslow, 84 Texas, 377.

It is immaterial that the call is made in the Welch to run to the north line of the Griffith. That does not show the land in controversy to be in the Welch. Burnett v. Burriss, 39 Texas, 504; Tippen v. McCampbell, 26 S. W. Rep., 647; Duff v. Moore, 68 Texas, 270; Boon v. Hunter, 62 Texas, 582; Freeman v. Mahoney, 57 Texas, 626.

The natural objects called for at the northeast corner of the Welch being found and identified, the other lines must be determined by commencing at that point, not at the beginning corners, as set forth in the English field notes, and course and distance run. Phillips v. Ayers, 45 Texas, 607; Davis v. Smith, 61 Texas, 21.

It is incompetent and inadmissible for a surveyor to testify to his opinion whether a line he had examined is the actual line called for in a survey. He can only testify to such facts as he found, original bearing trees, monuments, etc., called for in said survey. The conclusion is for the court or jury. Especially was this wrong and injurious in this case, for the reason that Eubank testified that the only monument called for by the Griffith to be on its north line, to wit, its northeast corner, could not now be found, and other witnesses testified that it was never known. Randall v. Gill, 77 Texas, 354; Russell v. Hunnicutt, 70 Texas, 659; Reast v. Donald, 84 Texas, 651; Schunior v. Russell, 83 Texas, 93.

Boundary is a question of law for the court, and not a fact to be testified to by a witness. Robinson v. Douthit, 64 Texas, 107.

This not being a contest between parties as to private or common

boundaries, the declarations of Henry Griffith, made while he was the owner of the Griffith, were inadmissible, and incompetent to show that the line he claimed for the north line of the Griffith is the line originally called for by Welch, as against the State on its public domain, and one claiming under the State on its public domain, as does the defendant on the land in controversy. Ratliff v. Burleson, 7 Texas Civ. App., 621; Welder v. Hunt, 34 Texas, 47; Hunt v. Evans, 49 Texas, 316; Stroud v. Springfield, 28 Texas, 666; Evans v. Hurt, 34 Texas, 113; Russell v. Hunnicutt, 70 Texas, 660.

The defendant, claiming the land in controversy under purchase from the State, as a part of its public domain, it can not be shown by reputation or long recognition that the north line of the Griffith and the south line of the Welch are common, because the State would not be bound by such long recognition, and the defendant, claiming under the State, could not be bound by such recognition, made while the land was public domain. Ratliff v. Burleson, 7 Texas Civ. App., 621.

*C. F. Stevens*, for appellee.—The original English field notes and the map or plat prepared by the surveyor who located the survey are a part of the original title, and must be considered together with the field notes embraced in the grant for the purpose of defining and fixing the location of the survey. Wilkins v. Clawson, 6 Texas Law Journal, 160; Welder v. Carrol, 29 Texas, 331; Cook v. Dennis, 61 Texas, 248; Irvin v. Bevil, 80 Texas, 338.

The Henry Griffith league, having been first located, and the north line of the same being a well marked and defined line, the C. C. P. Welch league in calling for the north line of the said Griffith league will go to the same, irrespective of course and distance. Anderson v. Stamps, 19 Texas, 465; Booth v. Strippleman, 26 Texas, 443; Woods v. Robinson, 58 Texas, 655; Fagan v. Stoner, 67 Texas, 287.

Where field notes called for unmarked lines of surrounding surveys, the position of which could be actually ascertained, and there was no evidence as to how the survey was actually made, it was presumed that the surveyor actually made the survey on the ground, and such unmarked lines prevailed over calls for courses and distances in case of conflict. Waggoner v. Daniels, 44 S. W. Rep., 946; Maddox v. Fenner, 79 Texas, 290; Coleman Co. v. Stewart, 65 S. W. Rep., 383; Platt v. Vamillion, 99 Fed. Rep., 364; Wagner v. Danfield, 4 Texas Civ. App., 354; Waggoner v. Daniels, 18 Texas Civ. App., 235; Angle v. Young, 25 S. W. Rep., 798.

The statement of an original grantee of land may be proven in order to show where his lines were originally located and run. Stroud v. Springfield, 28 Texas, 666; Hurt v. Evans, 49 Texas, 316; Whitman v. Haywood, 77 Texas, 557; Evans v. Hurt, 34 Texas, 113; Tucker v. Smith, 68 Texas, 478; Medlin v. Wilkins, 1 Texas Civ. App., 469.

GILL, CHIEF JUSTICE.—F. M. Fitzgerald sued W. M. Goodson in trespass to try title to recover a tract of about 800 acres of land lying to the north of and adjoining the Griffith league survey in Liberty County. The land was claimed by plaintiff as a part of the Welch league of which he was the owner. It was held by Goodson on the theory

that it was vacant school land which he had purchased from the State. The case turned upon the inquiry whether there was a vacancy between the Welch and the Griffith.

A trial before the court without a jury resulted in a judgment for the plaintiff and Goodson has appealed.

It is apparent from the record that the controversy is in the main, if not entirely, one of boundary. Appellant insists, however, that there is a serious question of title involved. We will dispose of that before stating the facts affecting the issue of boundary.

The patent issued by the State to the original grantee, C. C. P. Welch, contained the following description: "Beginning at (a marked corner on the west bank of Old River), thence south 60 degrees west 6510 varas. Thence south 30 degrees east 4009.5 varas. Thence north 60 east 5750 varas, to the place of beginning." It is contended that the description is void, and that because the burden is on the plaintiff to show title in himself to the survey which is averred to include the disputed land plaintiff can in no event recover under the facts. The point was also made on the introduction of the grant in evidence.

While there is much force in the contention that the omission of the word "thence" just before the words "to the place of beginning" is so manifestly a clerical error it should be supplied by inference, there is another theory upon which the omission is so effectively supplied we pass the first without further comment.

The English field notes, from which the description in the grant was drawn, are as follows: "Beginning at the northeast corner of a league surveyed for Henry Griffith on the west band of .Old River. Thence up the river (with meanders including many calls) to a double-ash (minutely described and located). Thence south 60 west 128 varas to the edge of the prairie 6510 mound in prairie. . . . Thence south 30 east 4009 varas to the N. B. line of Henry Griffith league. Thence with said line north 60 east 5750 varas to the place of beginning, containing one league of land." These field notes made by the original surveyor and returned to the authorities as a basis for the grant are thus referred to in the grant itself. "Of which the boundaries are defined on the map and in the notes of survey returned by the surveyor as is seen in this title."

It is very clear that if the English field notes may be considered in aid of the description in the grant the last call is supplied. Appellant contends it can not be thus considered because the grant itself purports to give the field notes, and does not refer to the original field notes for description. In Irvin v. Bevil, 80 Texas, 332, are found expressions which apparently support appellant's contention, but if the proposition is sound it does not apply to this case, for if, as appellant contends, the description as set out in the grant is void, the reference to the field notes and map would clearly authorize their consideration and render the grant operative to convey the land included in the original field notes. We think the correct rule is laid down in Wilkens v. Clawson, 11 Texas Ct. Rep., 306; Welder v. Carroll, 29 Texas, 331; Cook v. Dennis, 61 Texas, 248.

We are of opinion there can be no serious question either as to the

admissibility or effectiveness of the original map and field notes to cure the ambiguity or omission in the grant.

The objection to the copy of the original map, to the effect that it was not included in the certificate of the Commissioner of the General Land Office, is perhaps valid, but as the question will doubtless be eliminated upon another trial we will not pause to discuss it.

The objections urged by appellant to the introduction in evidence of the mesne conveyance by which appellee sought to connect his title with the original grantee of the Welch league are without merit and are overruled. They are grounded upon the use of the word "diameters" for "varas" in the first call. The use of the word was inadvertent as is made manifest by the fact that the description undertaken is of the entire league, and as the description identifies the beginning corner and mentions the Welch league the erroneous use of the word is rendered harmless. This brings us to the issue of boundary.

The Griffith survey was made in 1835. Its field notes are as follows: "Situated on the south bank of Old River joining on and below a fourth of a league which is vacant and from the northeast corner of said fourth of a league at a distance, etc. (here follows description of bearing trees), thence south 60 west 7800 varas reaching a stake for corner. Thence south 30 east 2450 varas to where it is cut by the northern boundary of the league surveyed to Wm. Bloodgood. Thence east 250 varas to the northeast corner of the Bloodgood. Thence south 500 varas following the east line of the Bloodgood to a stake corner. Thence north 60 east 9000 varas and from thence following the turns of the river upward until reaching the point of beginning, containing a league of land."

No marks of the abandoned league corners or lines were found upon the ground, nor was any witness adduced who had ever seen the northeast corner of the Griffith or knew from any proper source its accurate location. It was shown, however, by the admissible declaration of H. M. Griffith, Sr., the original grantee, where the north line of the Griffith was, and this was corroborated by evidence of general reputation covering a long period of time. Evidently the corner and bearing trees of the northeast corner of the Griffith had been destroyed prior to 1874 when a surveyor named Minter sought to find them.

We are of opinion we ought not to reverse the judgment on the proposition that the location of the Griffith north line was not established, and will proceed therefore upon the theory that it and the Griffith northeast corner as originally established was definitely shown.

The northeast corner of the Welch is established beyond dispute and as to its location counsel do not disagree. Measuring south from the undisputed north line of the Welch it requires an excess of 1034 varas to reach the Griffith north line. The following rough sketch indicates the situation in a general way as well as the contentions of the litigants.

The northwest and southwest corners of the Welch are unmarked prairie corners, and neither the original field notes nor the patent indicate that the surveyor established any other marks for the location either of lines or corners, except the Griffith N. E. corner, which had been established four years before by a different surveyor, and the northeast corner of the Welch above named.

If the west line of the Welch be extended south to the north line of the Griffith the south line of the Welch will be 824 varas shorter than the south line as called for in the Welch field notes. Or to put it differently, if the Welch is run out from the N. E. corner of the Griffith, thence west the distance named, thence north a distance sufficient to intersect an extension of the Welch north line, the distance thence to the Welch N. E. corner would be 824 varas in excess of that called for in the patent, and would give the survey an excess of about 1,800 acres.

The English field notes indicate that the original surveyor carefully meandered the river on the east boundary of the Welch and that he carried the meanders to the N. E. corner of the Welch. These meanders not only fairly correspond with the river as indicated on the map returned by the original surveyor to the General Land Office, but fairly correspond with the present courses of the river for the distance covered by the meanders south from the N. E. corner of the Welch. They are inconsistent with the part of the river forming the eastern boundary of the strip claimed to be vacant, that is to say the part of

the river covered by the 1,034 varas running northward from the Griffith N. E. corner.

Under this state of facts it is contended the trial court's judgment ought not to be permitted to stand.

The appellee's contention in behalf of the judgment are based upon two rules. First, when the field notes of a survey call to run to the marked lines of an older survey they will be carried thence though the distance called for will not suffice. Second, where the unmarked line of an older survey is called for and can be identified with certainty the call for distance must yield to it.

The appellee seems to regard each of these as absolute rules of law. The truth is, they are neither the one nor the other. At most they are rules of evidence and are relative in their application.

Calls for rivers and well defined streams are held to be of the highest dignity. Next in order are calls for artificial objects. Next are calls for course and distance. Standing thus to each other their relative force as evidence is defined; but by the aid of other facts the weakest may in a given case overcome the force of the call of highest dignity.

The purpose of the inquiry and the end to which all evidence is addressed in a boundary suit, is to find the footsteps of the original surveyor. If, notwithstanding a call for a river, it is shown by other evidence that the surveyor did not reach the stream but by mistake supposed a tributary of the stream was the stream itself, the call for the river will yield. So of a call for a marked line of an older survey. (Booth v. Upshur, 26 Texas, 64; Booth v. Strippleman, 26 Texas, 436; Hubert v. Bartlett, 9 Texas, 97; Jones v. Burgett, 46 Texas, 284; 4 Am. and Eng. Ency. of Law, 760.)

On the other hand, though a call for course and distance is unquestionably of greater weight than one for an unmarked prairie line, yet if from all the facts and circumstances of the given case it reasonably appears that the original surveyor ascertained the location of the unmarked line called for, actually went to it and intended by his field notes to include the land thus bounded, the distance will be extended. (Maddox v. Fenner, 79 Texas, 279; Stevsoff v. Jackson, 13 Texas Ct. Rep., 835.)

Standing alone and unaided and unmodified by extraneous facts the calls prevail in the order named, and so if in this case the call for the north line of the Griffith was opposed only by the call for the width north and south of the Welch survey it would unquestionably prevail, and the judgment would be affirmed. The situation, however, is otherwise.

In the first place, while the English field notes of the Welch call to begin at the northeast corner of the Griffith the corner called for is not described nor is there anything therein directly showing that the surveyor actually saw and was familiar with the trees by which it was marked and identified. The map returned by him to the land office in connection with the field notes does not indicate the location of surrounding surveys, nor contain a reference to the Griffith. This peculiarity in the field notes and the map doubtless influenced the translator who prepared the grant, to select the northeast corner of the Welch as the

beginning corner as that was the only corner minutely described in the grant. As a consequence the Griffith is not called for in the grant itself.

The call for a width of 4009 varas gives the grant its quantity, and an extension to the Griffith line will give it an excess on the south side of over 800 acres. But all these facts would not induce us·to disturb the judgment but for the following potent circumstances:

It is undisputed that the meanders of the river, as returned by the original surveyor, when reduced to a straight line indicate the width of the Welch survey at its eastern end as pratically the same as the distance called for on the west; that is to say, 4009 varas. This distance is made up of nineteen calls varying both in distance and direction according to the course of the river. A line is extended to the marked line of an adjoining survey notwithstanding the shortage in the call for distance on the theory that the surveyor was mistaken in his call for distance. But when the straight line on the west is equalled by reducing to a straight line the nineteen variant calls for the meanders of the river on the east, the coincidence is so unusual as almost to exclude the idea that a mistake in distance was made. It is further shown that these meanders coincide generally with the river for that distance south from the northeast corner of the Welch, and do not correspond with any part of the river lying immediately north of the Griffith northeast corner. Taking all these circumstances together it is difficult to escape the conclusion that the original surveyor in selecting his starting point chose, through mistake, some other marked point on Old River than the one named as the Griffith northeast corner.

The record suggests a possible explanation in this. The Griffith, which is the older survey, called to begin at a corner of an abandoned one-fourth league survey. The Griffith was described as "Joining on and below a one-fourth league which is vacant, etc." While it is true it calls for the northeast corner of the abandoned survey, which would apparently include it in the Griffith, the other references to it render it probable that the call for the northeast corner of this old survey is erroneous and that the northeast corner of the Griffith was in fact the southeast corner of the old survey.

We are of opinion therefore that the judgment should be reversed and the cause remanded for another trial. We do not wish to be understood as holding that even under the record as it stands there is no issue for the jury. We think it probable that upon another trial the facts may be more fully developed.

In view of another trial it is proper for us to determine certain questions affecting the admissibility of evidence.

By the sixth assignment of error the appellant complains of the action of the trial court in concluding that the Henry Griffith north line was identified as a marked line. The assignment can not be sustained. The declaration of Henry Griffith, Sr., as testified to by Barber, and the general repute for so many years is, in the absence of opposing evidence, sufficient to sustain the finding of its location; and not only is it true that there was no opposing evidence, but the theory of the appellant as to the extent of the vacancy coincided with appellee's theory as to the location of the Griffith line as found by the court.

In order for the marked line to overcome a call for course and distance

it must of course be identified on the ground. (Gagan v. Stoner, 67 Texas, 287; Bigham v. McDowell, 69 Texas, 102.) If this is done it is immaterial that the marked corner existent at the time the Welch survey was made, has been destroyed. In this connection it is well to observe that in weighing the force of the Griffith north line as a marked line it is immaterial that it was never marked at any other point than the northeast corner. In view of the fact that the corner is called for it will, if identified, be accorded the weight and dignity of a marked line and will control the call for distance, unless it be overcome by force of other circumstances and shown to be a mistaken call.

Plaintiff offered in evidence, as bearing upon the issue of boundary, the field notes of the T. & N. O. R. R. Company survey which called for the north line of the Griffith and the south line of the Welch as identical. The railway survey was made thirty years after the location of the Welch and the surveyor who made the latter is not shown to have had any knowledge of the lines of the Welch and Griffith. The evidence should not have been admitted.

Eubank, a surveyor, was permitted to testify over objection that in his opinion a line run out by him and coinciding with appellee's contention was the north line of the Griffith as pointed out to him by Addison Barber. Eubank had surveyed the line and Barber had pointed out a cove where he claimed Griffith himself said the line ran. He neither had nor claimed any first hand knowledge on the subject. His testimony was clearly admissible as identifying the line in question with that identified by Barber.

Under the twelfth assignment appellant assails the action of the court in admitting the depositions of Addison Barber to the effect that Henry Griffith, the original grantee, pointed out to him the north line of the Griffith survey shortly after the close of the Civil War. That Griffith was living on the league at the time and had so lived for a long time. (Its location at the time was not in controversy.) That Griffith showed him where the line was in connection with an offer to give witness a few acres of land. Witness did not pretend that at that time the line was marked or that he was shown the original corner. We think the evidence was clearly admissible and that none of the objections urged against it are tenable. The declaration of one in possession when pointing out his boundaries to which he claimed at a time when there was nothing making it to his interest to misrepresent the facts is admissible, the declarent being dead. (Hurt v. Evans, 49 Texas, 316; Russell v. Hunnicutt, 70 Texas, 659; Stroud v. Springfield, 28 Texas, 666; Whitman v. Haywood, 77 Texas, 557.) The original grantee is presumed to have had knowledge of his boundaries. The declaration was not introduced to establish an estoppel or acquiescence as between adjoining owners, but as original evidence to establish the line as located by the original surveyor. For this purpose it was admissible against the State or a grantee under it and the case of Ratliff v. Burleson, 7 Texas Civ. App., has no application.

The statements of the witness Eubank that his meanderings of the river just north of the Griffith line correspond very well with those in the Welch field notes, were inadmissible. The two sets of meanderings were in evidence, and when compared left no room for opinion

unless some question arose as to the identity or comparative identity of calls, in which event the expert opinion of a surveyor would be admissible.

Evidence of general repute and recognition of the location of the Griffith line was admissible, and all assignments presenting objections thereto are overruled.

In justice to the trial court it should be stated that as the trial was without a jury he heard all the evidence, noting the objections above sustained, and reserved his rulings on these objections. In the absence of conclusions of fact and law indicating otherwise it is fair to suppose the court considered and was influenced alone by the evidence properly heard. We express our opinion on the points in view of another trial.

For the reasons given the judgment is reversed and the cause remanded.

*Reversed and remanded.*