## GOODSON v. FITZGERALD.

(Court of Civil Appeals of Texas. Feb. 23, 1911. Rehearing Denied March 16, 1911.)

1. BOUNDARIES (§ 3*)—FIELD NOTES—MARKED LINE OF OLDER SURVEY.

Where an unmarked line of an older survey is called for and it can be identified with certainty, it will supersede a call for distance.

[Ed. Note.—For other cases, see Boundaries, Cent. Dig. §§ 25–29; Dec. Dig. § 3.*]

2. BOUNDARIES (§ 3*) — MARKED LINE — STREAM.

Where, notwithstanding a call for a river or a marked line of an order survey, it is shown by other evidence that the survey did not reach the stream or the marked line, the call for the river or line will yield.

[Ed. Note.—For other cases, see Boundaries, Cent. Dig. §§ 25–29; Dec. Dig. § 3.*]

3. BOUNDARIES (§ 33*) — CALLS — BEARING TREES—PRESUMPTIONS—"MARKED LINE."

Where bearing trees are called for at the eastern end of a northern boundary line of a survey and a stake at the western terminus, there is a presumption that the line was actually surveyed, and the corners identified by the bearing trees and the stake making the line a "marked line."

[Ed. Note.—For other cases, see Boundaries, Cent. Dig. §§ 146–152; Dec. Dig. § 33.*]

4. BOUNDARIES (§ 3*) — MARKED LINE — OBJECTS—NECESSITY OF CALLS.

Where a marked line of an adjacent survey is called for, and such line can be ascertained with accuracy, but there is no evidence as to how the survey was actually made, and a controversy arises as to whether course and distance or the marked line shall prevail, objects found on the ground may be considered as indicating the footsteps of the surveyor, though there are no calls for such objects in the grant.

[Ed. Note.—For other cases, see Boundaries, Dec. Dig. § 3.*]

Appeal from District Court, Chambers County; L. B. Hightower, Judge.

Action by F. M. Fitzgerald against W. M. Goodson. Judgment for plaintiff, and defendant appeals. Affirmed.

H. E. Marshall, for appellant. Stevens & Pickett, for appellee.

McMEANS, J. This suit was instituted as one of trespass to try title, but, as presented on this appeal, is one of boundary only. A trial before a jury resulted in a verdict and judgment for appellee. This is the third appeal. 40 Tex. Civ. App. 619, 90 S. W. 898; 115 S. W. 50. Three judgments have been rendered in favor of appellee on the facts, two of which were upon verdicts. A sufficiently full statement of the case, as well as of the law applicable to cases of this kind, will be found in the opinion of this court, delivered by former Chief Justice Gill, in 40 Tex. Civ. App. 619, 90 S. W. 898, which obviates the necessity of a full statement in this opinion. It will be seen from the opinion referred to that the question to be determined is whether the Welch and Griffith surveys join, or whether there is a vacancy between them. The following rough sketch indicates the situation in a general way, as well as the contentions of the litigants:

There is but one established corner, identified by the original marks, of either of the surveys, and that is the northeast corner of the Welch. The field notes of the Welch, as contained in the patent, call to run from its northeast corner south 60 degrees west, 6,510 varas; thence south 30 degrees east, 4,009.5 varas, stake in a mound on the north boundary of the Griffith; thence north 60 degrees east, 5,750 varas. The English field notes call to begin at the northeast corner of the Griffith; thence up Old river with its meanders to the now well-known northeast corner of the Welch; thence west, south, and east the same variations and distances stated in the field notes of the patent to the place of beginning. By actual measurement on the ground, it is conclusively established that the distance from the north line of the Welch to the north line of the Griffith is 5,043 varas, a distance of 1,034 varas in excess of that called for in the Welch field notes, so that to reach the Griffith the west

---

line of the Welch must be extended 1,034 varas beyond the distance called for in the field notes. In the former opinion of this court it is said: "The English field notes indicate that the original surveyor carefully meandered the river on the east boundary of the Welch, and that he carried the meanders to the northeast corner of the Welch," and "these meanders, not only fairly correspond with the river as indicated on the map returned by the original surveyor to the General Land Office, but fairly corresponds with the present courses of the river for the distance covered by the meanders south from the northeast corner of the Welch." It was further stated in the opinion that it was "undisputed that the meanders of the river as returned by the original surveyor, when reduced to a straight line, indicate the width of the Welch at its eastern end as practically the same as the distance calls for on the west; that is to say, 4,009 varas. This distance is made up of 19 variant calls, varying both in distance and direction according to the course of the river. A line is extended to the marked line of an adjoining survey, notwithstanding the shortage in the call for distance, on the theory that the surveyor was mistaken in his call for distance. But, when the straight line on the west is equaled by reducing to a straight line the 19 variant calls for the meanders of the river on the east, the coincidence is so unusual as almost to exclude the idea that a mistake in distance was made. It is further shown that these meanders coincide generally with the river for that distance south from the northeast corner of the Welch, and to not correspond with the part of the river lying immediately north of the Griffith northeast corner; that, taking all these circumstances together, it was "difficult to escape the conclusion that the original surveyor in selecting his starting point chose through mistake some other marked point on Old river than the one named in the Griffith northeast," and that the possible explanation of this was that "the Griffith, which is the older survey, called to begin at the northeast corner of an abandoned one-fourth league survey, which would apparently include it in the Griffith, but from other references to this old survey it is probable that the call for its northeast corner is erroneous, and that the northeast corner of the Griffith was in fact the southeast corner of the old survey." It was upon these considerations that the judgment upon that appeal was reversed; but it was expressly declared that this court did not wish to be understood as holding that even under the record as it then stood there was no issue for the jury, but that it was probable upon another trial that facts might be more fully developed. It is thus seen that in reversing the judgment upon the first appeal this court was largely influenced by the assumption, arising from the testimony then presented, that Old river, which is the eastern bound-

ary of the Welch, had been meandered by the original surveyor who located the land, and that, when the 19 variant calls for the course of the stream were balanced by reducing the same to a straight line, the same practically equaled the call for distance across the survey as called for. Before the last trial, the river was actually meandered by an engineer, one Compton, and it was shown by his testimony, conclusively we think, that the meanders found by the actual survey were not the same as set forth in the original field notes. The difference is marked. In the original field notes there are 19 variant calls; in the survey upon the ground there are 75. In both the vara measure is used. Reducing, for convenience, the varas into feet and reversing the calls so as to run south from the northeast corner of the Welch the first call in the English field notes is south 23 degrees east 555 feet, while the call in the survey made by the engineer, Compton, is south 30 west 322 feet. Taking the tenth call running south from the northeast corner and comparing the same with reference to the call in the English field notes the same distance from said corner, the engineer found himself 2,000 feet south 60 degrees west from the point where he would have been had he followed, upon the ground, the field notes of the original survey. At the twenty-fifth call, according to the survey of the river by Compton, as testified by him, he was 2,000 feet due west of the point he would have been had he followed the original field notes. The actual survey made by Compton in no instance corresponds with the meanders of the river as given in the original field notes, and the instances given above are merely for the purpose of illustrating the inaccuracies of the calls for the course of the stream as given in the English field notes. From all this we conclude that the surveyor who located the survey, while he called for the river and purported to give its variant courses on the eastern end of the Welch, did not get the meanders from a survey actually made. The meanders as given in the original field notes not coinciding with the actual course of the river, it is but of little moment that the variant calls there given, when reduced to a straight line, equal the distance of the western line of the Welch, because such calls and the distances stated could have been arrived at as a result of a mathematical calculation without the surveyor having been upon the ground at all.

The question, then, that we are at last called upon to answer, is, Does the call for the north boundary line of the Griffith control as against the call for distance? We think under the facts of this case this question must be answered in the affirmative. Among the well-settled rules in determining the question of boundary are the following: When the field notes of a survey call to run to marked lines of an older survey, they will be carried there, though the distance

called for will not suffice; and, again, where the unmarked line of an older survey is called for, and it can be identified with certainty, the call for distance must yield to it. However, as said by this court in the former opinion, "the purpose of the inquiry, and the end to which all evidence is addressed in a boundary suit, is to find the footsteps of the original surveyor. If notwithstanding a call for a river it is shown by other evidence that the surveyor did not reach the stream, but by mistake supposed a tributary of the stream was the stream itself, the call for the river will yield. So of a call for a marked line of an older survey. Booth v. Upshur, 26 Tex. 64; Booth v. Strippleman, 26 Tex. 436; Hubert v. Barlett, 9 Tex. 97; Jones v. Burgett, 46 Tex. 284; 4 Enc. of Law, 760." The Griffith was the older survey. Its field notes are as follows: "Situated on the south bank of Old river, joining on and below the fourth of a league which is vacant, and from the northeast corner of said fourth of a league at a distance, etc. [Here follows description of bearing trees and continuing, thence S. 60° W., 7,800 varas; thence S. 30° E., 2,450 varas; thence E., 250 varas; thence S., 500 varas; thence N. 60° E., 9,000 varas; thence following the river to place of beginning.]" No bearing trees or artificial objects except stakes are called for at any of the corners other than at the northeast corner, and the bearing trees there called for cannot now be found. But the fact that bearing trees were called for at the eastern end of the north boundary line and a stake at the western terminus raises the presumption that the line was actually surveyed and the corners identified by the bearing trees and stake, so that the line in question falls within the definition of a marked line. Thatcher v. Matthews, 101 Tex. 122, 105 S. W. 317; Steusoff v. Jackson, 40 Tex. Civ. App. 328, 89 S. W. 447.

As said in Steusoff v. Jackson, 40 Tex. Civ. App. 332, 89 S. W. 447: "We have no question but that a line marked at the beginning and the end or along its course comes within the definition of a marked line," etc. In addition to the bearing trees called for at the northeast corner, it was shown by the admissible declaration of H. M. Griffith, Sr., the original grantee, where the north line of the Griffith was, and this was corroborated by evidence of marks upon trees at or near the place so pointed out by Griffith as being upon his north line, and further corroborated by evidence of general reputation covering a long period of time. From all this we conclude that the north line of the Griffith at the time the survey of the Welch was made was a marked and known line. This being true, the call in the Welch field notes for its west line to run to the Griffith and its east line to run from the northeast corner of the Griffith to the well-known northeast corner of the Welch will control, and the call for distance must yield, in the absence of any testimony in the record sufficient to justify a finding that the surveyor mistook some other line for the Griffith, and, thinking that the Griffith had been reached, called for that line, instead of for the one where he actually stopped. There is no proof in the record that other lines had been marked out north of the Griffith at the time it was surveyed. The Griffith field notes describe the survey as being situated "below a fourth of a league which is vacant," but the testimony is silent as showing that the lines of the fourth of a league were marked or were found upon the ground or in any way identified. We think, in view of the foregoing, that the issue was presented by the evidence, and the verdict in favor of appellee must be upheld.

But appellant by his second proposition under the first assignment contends that lines and boundaries cannot be construed with reference to objects that may be found upon the ground as indicating the footsteps of the surveyor when there are no calls in the grant for such objects. In other words, as applied to the facts of this case, evidence of the existence of marked north boundary line of the Griffith may not be looked to as establishing a marked line, so as to make the call of the west line of the Welch for that boundary of controlling force over the call for course and distance, unless the objects which furnish such evidence are called for in the grant. We do not understand this to be the law. In Maddox v. Fenner, 79 Tex. 291, 15 S. W. 237, the rule is stated that when unmarked lines of adjacent surveys are called for, and when such lines can be ascertained with accuracy, and when in the absence of all evidence as to how the survey was actually made there arises a controversy as to whether course and distance or the unmarked line of another survey shall prevail, no good reason is seen why the survey should not be given the dignity of an artificial object and prevail over course and distance. If this be true with reference to an unmarked line, it certainly should apply to a line which the evidence strongly shows, and which we find, was marked at the time the survey was made. In Steusoff v. Jackson, supra, this court held that the rule here invoked by appellant never contemplated that, in order for a call for a line to overcome a call for course and distance, the point at which the line called for is intersected by the projected line must be marked or indicated by some natural or artificial object, but that it was enough if from a named and marked object, intended to identify the line, the call for course will locate it. The theory is not when the surveyor arrived at the point of contract he actually saw at that point the marked line, but that, running it out from known and marked objects on the line itself, he was able to conclude with certainty that the point of supposed contact was the line called for. The contention as-

serted by the proposition cannot under the facts of this case be sustained.

We have examined all the assignments and their several propositions presented by appellant, and are of the opinion that no reversible error is pointed out in any of them.

The judgment of the district court is affirmed.

Affirmed.