### LOMAX v. ROWE et al.  (No. 3481.)

Court of Civil Appeals of Texas. Texarkana.
Feb. 2, 1928.

Rehearing Denied Feb. 16, 1928.

1. Boundaries ⬤⟿3(5)—Where trees called for in patent were not found, course and distance held controlling (Rev. St. 1925, §§ 5323, 5416).

Where trees called for in patent were not found, course and distance called for *held* controlling in suit under Rev. St. 1925, art. 5323, wherein certain land was claimed to belong to public school fund under article 5416.

2. Boundaries ⬤⟿3(5)—Where call for line and corner in field notes of survey, conflicting with call for specified course, was due to surveyor's mistake, call for course controlled.

Although call in field notes of survey for line and corner of another survey usually controls when it conflicts with a call for a specified course, where evidence indicated that the call for the line and corner was due to surveyor's mistake, call for course *held* to control.

3. Boundaries ⬤⟿37(3)—Evidence held to indicate that call for line and corner in field notes, which conflicted with call for course, was mistake of surveyor (Rev. St. 1925, arts. 5323, 5416).

Evidence, in suit under Rev. St. 1925, art. 5323, to compel survey of land which plaintiff claimed belonged to public school fund under

article 5416, *held* to indicate that call in field notes of survey for line and corner of other surveys, which conflicted with call for course, was due to surveyor's mistake.

**4. Public lands ⬸173.(18)—In suit to compel survey of land alleged to belong to public school fund, evidence held to show vacancy as claimed (Rev. St. 1925, arts. 5323, 5416).**

In suit, under Rev. St. 1925, art. 5323, to compel survey of land which plaintiff claimed belonged to public school fund under article 5416, evidence *held* to show vacancy as alleged.

Appeal from District Court, Panola County; R. T. Brown, Judge.

Suit by R. C. Lomax against Joe Rowe and others to compel a survey. Judgment for defendants, and plaintiff appeals. Reversed and rendered.

This suit, commenced November 29, 1926, by appellant, R. C. Lomax, against appellee Joe Rowe as the county surveyor of Panola county, was to compel appellee as such surveyor to survey and make return to the general land office field notes of a tract of 40.8 acres of land in Panola county, which, appellant claimed, belonged to the public school fund by force of article 5416, R. S. 1925, and which, he claimed further, he was entitled to purchase under the provisions of statutes then in force. In his petition appellant alleged that the land in question was bounded "on the east by the Ben C. Jordan survey; on the south by the C. G. Bradberry survey; on the west by the James Johnson survey; and on the north by the Thomas, Anderson survey"; and alleged, further, that he had complied with the requirement in article 5323, R. S. 1925, that he make inquiry of the commissioner of the general land office as to whether there was vacant land between said surveys as claimed by him, and that said commissioner had declined to recognize the existence of such a vacancy, and had refused to authorize a survey to be made to determine whether such a vacancy existed or not. Rowe's answer to the suit consisted of exceptions, a general denial, and a plea specially denying the existence of a vacancy as claimed by appellant. At Rowe's instance, it seems appellees John Lewis, Robert Johnson, the Humble Oil & Refining Company, and the Magnolia Petroleum Company became parties defendant with him. The Humble Oil & Refining Company filed a disclaimer, and was dismissed from the suit. The answers of Johnson and the Magnolia Petroleum Company, respectively, consisted of a general denial only. Lewis' answer consisted of exceptions, a general denial, and a special denial that a vacancy as claimed by appellant existed between the surveys specified. It appeared from evidence admitted at the trial that the vacancy claimed did not exist, if it was true (as appellees asserted it was) that

the east boundary line of the James Johnson survey and west boundary line of the Ben C. Jordan survey was a common one, but did exist if said east boundary line of said Johnson survey was located 130 varas west of said Jordan west boundary line (as appellant asserted it was). Below is a rough plat showing the vacancy as claimed:

After telling them that the controversy in the case was as to "the location (quoting from the charge) of the true and correct east boundary line of the James Johnson survey," and designating for the purpose of identifying it the line claimed by appellant as "line No. 1," and that claimed by appellees as "line No. 2," the court instructed the jury as follows:

"You will determine from the evidence in this case which one of the said lines, whether 1 or 2, is the true and correct east boundary line of the James Johnson survey, and so state in your verdict and answer in reply to this question."

The jury answered that line No. 2 was the true east boundary line of the James Johnson survey. The appeal is from a judgment establishing said boundary line of said Johnson survey at the place appellees asserted it to be, and declaring that the vacancy claimed by appellant did not exist.

Cofer & Cofer, of Austin, and J. R. Duran, of Carthage, for appellant.

Woolworth & Baker, Long & Strong, and H. N. Nelson, all of Carthage, for appellees.

---

⬸For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

WILLSON, C. J. (after stating the facts as above). We think it ought to be said it appeared without dispute in the evidence having probative force that the vacancy existed as claimed by appellant. While bearing trees called for in the patents had long ago disappeared, the location on the ground of the southwest corner of the Thomas Anderson survey on the east boundary line of the W. A. Pressley survey (No. 37) was well known, as was the location of the southeast corner of said Anderson survey. It was undisputed in the evidence, that, while the call in the field notes of the Anderson was for its south boundary line to be only 1,810 varas long, the actual distance on the ground between its southwest and southeast corners was not less than 1,830 varas. According to a call in the patent issued on said Anderson survey, its southeast corner was at a stake from which a pine bore S. 50 W. 15 varas and another pine bore S. 30 W. 15 varas, marked J. S. & J. C. The James Johnson survey was in the form of a parallelogram, with north and south lines 1,700 varas long, and east and west lines 2,577 varas long. A call in the patent issued on said Johnson survey was for its north boundary line to begin at the southwest corner of said Anderson survey and to run thence east, 1,700 varas, according to which its northeast corner was at the point where appellant claimed it to be, to wit, 130 varas west of the southeast corner of the Anderson.

[1] Appellees' contention that it was not at that point, but that it and the southeast corner of the Anderson was a common one, was based mainly on the fact that the description of the bearing trees called for in the patent of the Johnson to be at its northeast corner was identically the same (except as to marks on the trees) as the description of the bearing trees called for in the patent of the Anderson to be at its southeast corner, to wit, a pine S. 50 W. 15 varas from a stake and another pine S. 30 W. 15 varas, marked J. G. & J. S.

Trees like those described were not found at the distance called for in the Anderson patent nor at the distance called for in the Johnson patent, but a witness testified he found roots of pine trees at the places called for in the Anderson patent. That testimony may have been entitled to weight in establishing that pines as described in the Anderson patent in 1851 (when the survey was made) stood at its southeast corner, but we think it did not warrant a finding that trees of a like description in 1853 (when the Johnson survey was made) did not stand at the point 1,700 varas east of the Anderson southwest corner called for in the patent of the Johnson to be its northeast corner. The probability or improbability that pine trees were found at the times the respective surveys were made at the same course and distance from a stake 1,700 varas east of Anderson's southwest corner or from a stake 1,810 varas east of said corner would depend on whether there were many or few such trees at those points. It might very well have happened such trees were found at both points; and that they were was strongly indicated by the fact that those called for at the Anderson corner were marked in one way, while those called for at the Johnson corner were marked in another way.

On the facts stated it is clear, we think, that course and distance called for should have controlled in locating the northeast corner of the Johnson survey. Lafferty v. Stevenson (Tex. Civ. App.) 135 S. W. 216; Guill v. O'Bryan (Tex. Civ. App.) 121 S. W. 593.

As is shown above, the northeast corner of the Johnson survey is at a point 130 varas west of the southeast corner of the Anderson survey. The call in the patent issued on said Johnson survey is for its east line to run south from its northeast corner. It follows that the east line of the Johnson is 130 varas west of a line extending south from the southeast corner of the Anderson survey. The call in the patent issued on the B. C. Jordan survey is for its west boundary line to run from its northwest corner "south (quoting) said P. M. Mays, Thomas Anderson, and James Johnson east boundary 4,952 varas stake C. G. Bradberry's northwest corner," etc. It is plain, we think, if that call is respected so far as it is for said west line of the Jordan to run south with the east lines of the May and Anderson surveys and then on south, but ignored so far as it is for the east line of the Johnson and northwest corner of the Bradberry survey, the vacancy exists as claimed by appellant.

So it seems the answer to the question as to whether the vacancy exists or not depends upon whether said call for the Johnson east line and Bradberry northwest corner should be ignored or not.

[2] Ordinarily, a call in field notes of a survey for a line or corner of another survey is allowed to control when it conflicts with a call in such field notes for a specified course, but not when the facts and circumstances of the case indicate, as they do here, we think, that the call for the line and corner was due to a mistake on the part of the surveyor. Hamilton v. Blackburn, 43 Tex. Civ. App. 153, 95 S. W. 1094; Goodson v. Fitzgerald, 40 Tex. Civ. App. 619, 90 S. W. 898; Crosby v. Stevenson, (Tex. Civ. App.) 156 S. W. 1110; Miller v. Campbell (Tex. Civ. App.) 171 S. W. 251; Booth v. Upshur, 26 Tex. 64; Booth v. Strippleman, 26 Tex. 436.

[3] It is obvious, if the northeast corner of the Johnson survey is at a point 1,700 varas east of the southwest corner of the Anderson survey, as we have determined it is, that to reach the east line of the Johnson survey the surveyor of the Jordan, instead of going on

south when he reached the southeast corner of the Anderson survey, must have turned west, and run 130 varas with the Anderson south line. We think it is unreasonable to suppose he did that without noting the fact in the field notes, and that it ought to be assumed the call for the east line of the Johnson was due to a misapprehension on his part as to the location of that line. That the call was due to a mistake, and that the call for the northwest corner of the Bradberry also was due to a mistake, is further indicated by the fact that in the field notes the surveyor made of the Jordan survey he described its southwest corner as a stake "from which (quoting) a black jack bears S. 25" 5 varas, another bears S. 66 W. 4 varas, each marked B. J.," whereas said northwest corner of the Bradberry survey according to its field notes was a stake "from which (quoting) a red oak bears N. 60 W. 6 varas, a post oak bears S. 12 E. 4 varas, each marked C. B."

[4] As we understand appellees, they are not in the attitude of contending that the west line of the Jordan survey is not a continuous straight line south from its northwest corner to the Bradberry survey. Their contention that a vacancy as claimed does not exist seems to be predicated entirely on the view that the southeast corner of the Anderson survey and northeast corner of the Johnson were at the same place about 1,810 varas east of the southwest corner of the Anderson, and that the east line of the Johnson, therefore, was a continuation south of the east line of the Anderson.

That appellees' view is not the correct one we think is indicated by testimony hereinbefore referred to, and by other testimony showing the northwest corner of the Bradberry survey to be on the east boundary line of the Johnson survey, the southwest corner of the Bradberry and northwest corner of the M. Fain survey to be a common one, the southwest corner of the Fain and northwest corner of the R. B. Anderson survey to be a common one, and the southwest corner of the Anderson and northwest corner of the W. A. Grady survey to be a common one. The bearing trees called for at the corners of the surveys just mentioned, like those called for at the corners of the Thomas Anderson, James Johnson, and B. C. Jordan surveys, long ago disappeared, except the one called for at the southeast corner of the R. B. Anderson and northwest corner of the W. A. Grady survey, which was found and identified, and was on the ground at the time of the trial. The calls for common corners tie the Bradberry, Fain, R. B. Anderson, and Grady surveys together, and the call of the Bradberry for the east line of the Johnson and the bearing tree found at the southwest corner of the R. B. Anderson and northwest corner of the Grady gives said surveys the positions they appear on the plat above to occupy with reference to each other and to the other surveys shown on the plat. Those positions harmonize with each other, with the call of the J. M. Hallmark for its northeast corner to be at the southeast corner of the Johnson, and with the positions of the Grady and Hallmark surveys, as fixed by a decree of this court in Guill v. O'Bryan (Tex. Civ. App.) 121 S. W. 593.

The judgment will be reversed, and judgment will be here rendered granting appellant the writ he prayed for.