### STATE et al. v. JONES et al.

No. 4331.

Court of Civil Appeals of Texas. El Paso.

May 11, 1944.

Rehearing Denied June 29, 1944.

Gerald C. Mann, former Atty. Gen. of Texas, Grover Sellers, Atty. Gen. of Texas, and Geo, W. Barcus and Fagan Dickson, Asst. Attys. Gen., and Wilkinson, Johnson, Griffin & Bohannon, of Brownwood (Mae M. Ament and J. C. Epperson, both of Alpine, and Gordon Griffin, of Brownwood, of counsel), for appellants.

C. W. Truehart, Morriss & Morriss, Guy S. McFarland, and Lang, Byrd, Cross & Ladon, all of San Antonio, A. E. Owens, C. E. Patterson, Frank O. Ray, and Alan R. Fraser, all of Alpine, S. G. Sample, of Edna, Collins, Jackson, Snodgrass & Blanks, of San Angelo, Bill L. Holland, of Marfa, Vinson Elkins, Weems & Francis, of Houston, Phillip R. Overton and Ralph W. Yarborough, both of Austin, and W. E. Pope and Jack Pope, both of Corpus Christi (Scott Snodgrass, of San Angelo, and Tarlton Morrow, of Houston, of counsel), for appellees.

SUTTON, Justice.

This is an appeal from the judgment of the District Court of Brewster County.

The suit was instituted by Dick Williams and two others as independent executors of the estate of Elizabeth M. Watkins, deceased, against Asa A. Jones and some two hundred and fifty other defendants in trespass to try title and sought the recovery of some thirty sections of land in Block G–1, D. & W. R. R. Co., in Brewster County. M. L. Hopson, named originally as a defendant, on the trial aligned himself with the plaintiff and sought the recovery of certain sections of land in the same block. The State intervened, brought in a large number of additional defendants and owners of lands in the T. &. St. L. Blocks to the west, because of an alleged conflict and vacancy in the area. The State sought to establish three separate vacancies in the vicinity.

The trial was to the court without a jury. Judgment was rendered in favor of the defendants and against the plaintiffs and the intervener, the State, on all phases of the case, from which this appeal was prosecuted.

We take it the asserted claim to the vacancies has been abandoned, because there have been no assignments brought

forward concerning them, nor any brief made thereon. In fact, the appellees asserted a waiver and abandonment and no question has been raised. In all events, our view of the case eliminates any question of vacancies.

The plaintiffs sought to recover on the basis of certain corrected field notes pleaded by them and based upon what is known in the case as the "Hunnicutt Corner." The position of that corner and the west line of Block G–1 as contended for by the plaintiffs and the State is indicated in red on the plat inserted hereafter.

1995 issued to the Galveston Harrisburg and San Antonio Railway Co.

"Thence North 11,400 varas (6 miles) Thence East 11400 varas (6 miles)

"Thence South 11400 varas (6 miles) Thence East 22800 varas (12 miles)

"Thence South 45600 varas (24 miles) Thence West 34200 varas (18 miles)

"Thence South 11400 varas (6 miles) Thence West 11400 varas (6 miles)

"Thence North 57000 varas (30 miles) Thence East 11400 varas (6 miles) to the place of beginning."

[Ed. Note—Red line mentioned in opinion indicated by heavy black line].

At the times the files were laid, Powell & Gage File No. 2 and R. M. Gano & Sons, File No. 1, much of the southern part of the county was vacant, including nearly all the area touching the two files. As indicated on our plat, Powell & Gage No. 2 was filed March 7, 1881, Gano & Sons, April 23, 1881. File No. 2 was described as follows:

"Beginning 7600 varas South and 7600 varas East of the Northwest corner of Survey No. 1, Block No. 21, G. H. & S. A. R. R., made by virtue of Certificate No.

File No. 1 above was described:

"Beginning at a rock mound set for the S. E. corner of File No. 2 made by Powell & Gage March 7th, 1881, and recorded in Book A, page 168, file of Presidio County— said corner being 53200 vrs. (28 miles) south and 41800 vrs. (22 miles) East of the N. W. corner of Survey No. 1, Block 21 of G. H. & S. A. R. R. Co.'s surveys made by virtue of Certificate No. 1995 issued to said company;

"Thence East 13300 vrs. (7 miles)

"Thence North 19000 vrs. (10 miles)

"Thence East 11400 vrs. (6 miles)

"Thence North 19000 vrs. (10 miles)

"Thence West 24700 vrs. (13 miles)

"Thence South 38000 vrs. (20 miles) to the place of beginning containing Two Hundred Sections of land."

The rough plat in black is thought to represent approximately the locations of the pre-empted areas embraced in Files 2 and 1 according to their respective calls and Block 21 G. H. & S. A. Ry. Co. at the times the filings were made. As heretofore indicated, the red lines represent approximately the position Block G-1 takes under the contentions made by the plaintiffs and the State laid out from the Hunnicutt Corner.

The area embraced in File No. 1 was surveyed by John T. Gano in May and June, 1881. That embraced in File No. 2 was surveyed by S. A. Thompson in September, 1881. They each worked out of the same office under E. G. Gleim, the County Surveyor. Gano began his surveying with Section No. 1, Block G-1 at the southwest corner of the area and block, and the field notes for Survey One, which survey was the only one in the block surveyed on the ground and the only one that has calls for a marked corner, are as follows: "Beginning at a rock mound on the N. E. slope of the Rio Grande Range of mountains. The S. E. corner of File No. 2 made by Powell & Gage on March 7, 1881, and recorded in Application Book B, page 168, of Presidio County, Texas, from which Stairway Peak, the highest visible point of said Rio Grande Range bears S. 19½ deg. W. 950 vrs. and the top of Iron Mountain bears N. 1½ deg. E. about two miles. The N. W. corner of Survey No. 1, Block 21, by virtue of Certificate No. 1995 issued to the G. H. & S. A. Ry. Co., bears N. 38-1/6 W. 67,657 varas, and the mouth of Maravillas Creek bears S. 89-3/4 East 21,065 varas; Thence North 1900 varas" etc.

S. A. Thompson surveyed Section 36, Block 237, which section lies in the extreme southeast corner of the block and the area embraced in File No. 2 and the field notes for that survey read, in part:

"Beginnning at a rock mound the N. E. corner of Survey No. 35 & S. W. corner of Survey No. 25 in this block for the N. W. corner of this survey;

"Thence S. etc.

"Thence East 1900 vrs. to a rock mound established by J. T. Gano for the S. W. corner of Survey No. 1 in his block G-1, for the S. E. corner of this survey & block from whence Stairway Peak brs. S. 19½ Deg. W. 950 vrs.; and the top of Iron Mountain bears N. 1½ deg. E. about 2 miles; this corner is situated on the N. E. slope of the Rio Grande Range;

"Thence N." etc.

There arose early some question about the exact location of the Gano Corner for his S. W. 1, Block G-1. Gano and Maddox Bros. & Anderson had some correspondence as early as the 5th day of December, 1888 with John T. Gano and with S. A. Thompson February 16, 1889, wherein Gano expressed a doubt as to Thompson having been to his corner. Thompson wrote the corner was well marked on the ground, indicating he was there.

In 1908 the Land Commissioner directed R. S. Hunnicutt, a licensed land surveyor, to go into the area and locate the original Gano Corner, mark it and destroy all other monuments and evidences of corners in the vicinity. He went, but there is no evidence he ran the Gano traverse from the N. W. corner of 1, Block 21, G. H. & S. A. Ry. Co. He marked it, and it has since been known as the Hunnicutt Corner. There has heretofore been considerable controversy over the identity of the Gano Corner and as to whether or not the Hunnicutt Corner is the same as the Gano original.

Plaintiffs and intervener assert and undertake to establish as a fact and as a matter of law that the Hunnicutt Corner is coincident with the original corner made by John T. Gano for the southwest corner of his Block G-1. For the identification thereof they rely upon the bearing calls found in the field notes. The plaintiffs in addition thereto rely upon certain ties and connections with subsequently surveyed G blocks made by the same surveyor for the same locators, R. M. Gano & Sons, which will be hereafter noticed. In this the State does not join.

In response to the request therefor the trial court filed findings and conclusions.

The suit is generally described as a boundary suit, but it more exactly involves the location of a point, to-wit, the Southeast Corner of File No. 2, Powell & Gage—

the Southwest Corner of Block G–1, from which the boundaries may be laid out.

The trial court found contrary to the contentions of the plaintiffs and the State, and found the Southeast corner of File No. 2, now the Southeast Corner of Block 237, T. & St. L. Ry. Co., and the Southeast Corner of Survey 36 in said block, to be coincident with the Southwest Corner of Block G–1, and located "3198.4 varas E and 3396 varas S of what is known as the Hunnicutt Corner." The trial court found Gano did no actual ground work other than to run a traverse from the N. W. corner of Survey 1, Block 21, G. H. & S. A. Ry. Co. to ascertain the location on the ground of the S. E. Corner of File No. 2 and mark the spot as he did in his field notes for Survey 1, Block G–1. The court further found a construction of G–1 from the Hunnicutt Corner conflicts with the T. & St. L. Blocks substantially as indicated by the red lines on our sketch. He finds Stairway Mountain to be a long mountain, running generally northwest and southeast, and takes its name from a stairway formation at the extreme southeast end above which is a high point identified by the only old resident testifying on the question as "Stairway Peak"; that plaintiffs and the State take another point at the North end of the mountain as "Stairway Peak." This latter he finds visible from the Hunnicutt Corner and that at the other end visible from the point the court fixes for the S. W. Corner of G–1. He finds there are many iron colored mountains in the vicinity and no particular one known to the inhabitants as "Iron Mountain," and that the Iron Mountain bearing in the Gano field notes does not substantially fit the Hunnicutt Corner.

The court found Gano established his corner without reference to the call for the mouth of Maravillas Creek, because that traverse was subsequently run by Surveyor Glenn (this is the testimony of Gano found in his correspondence), and that the Maravillas call is impossible to run on the ground, a fact which we find to be established by most, if not all, of the testimony of the engineers testifying in the case.

The court found two evident errors in Gano's 18th traverse run from the N. W. Corner Survey 1, Block 21 for the purpose of locating the S. E. Corner of File No. 2, the call for 70 varas instead of 5470 and S. 51 E. instead of S. 57 E., which he finds necessary to give effect to the overall call for the S. W. Corner of 1, Block G–1. (These errors are evident and apparent and are indicated by other evidence in the record and have been recognized by engineers testifying in this case as well as those who have previously surveyed in the area.)

File No. 2 segregated the area embraced therein from the public domain for twelve months from the date of its filing, which was perpetuated by the survey and return of the field notes made within the twelve month period. Any subsequent location or attempted location thereon was of no force and effect. Nothing Gano did or could do affected the rights of the locators of File No. 2. Arts. 3897, 3902, R.S. 1879; Cassin v. O'Sullivan, 61 Tex. 594, and cases cited.

The survey made by Thompson of File No. 2 was required to be "made by a copy of the entry or application, and strictly in accordance with the same," Art. 3896, R.S.1879. The file is merged in the survey, Forbis v. Withers, 71 Tex. 302, at page 306, 9 S.W. 154; and in the absence of evidence to the contrary, the survey is presumed to be made in accordance with the file. Texas & P. R. Co. v. Thompson, 65 Tex. 186, at page 191. It may be said, therefore, the S. E. Corner of Survey 36, Block 237, T. & St. L. Ry. Co., the S. E. Corner of said block, is coincident with the S. E. Corner of File No. 2.

Gano was under the necessity when he went out to lay out the junior location No. 1 to respect No. 2, and to lay it out in such way as not to encroach upon No. 2. It is evident from his calls he did this and undertook to survey No. 1 outside No. 2 and it must be presumed he did his duty and thus surveyed Block G–1. The call for the S. E. Corner of No. 2 is locative and fixes the S. W. Corner of G–1 if that point was properly located.

The contention of plaintiffs and the State is the Hunnicutt Corner is the original Gano Corner for S. W. G–1 and accepted by Thompson as the S. E. Corner of his Block 237 and Survey 36 of that block. This on the part of the State, and on the part of the plaintiffs for the most part and aside from their "system theory" is based upon the bearing calls in the field notes of Survey 1, Block G–1. The trial court found against these calls. He found the call for Maravillas Creek to be a mistaken call and run by Glenn after Gano had established

his S. W. G–1 and that it could not be run on the ground. The testimony amply supports this finding. Mr. Ball reversed the calls and by triangulation missed the Hunnicutt Corner by some 500 varas.

The record is neither of the engineers testifying in this case knew or had pointed out to him any mountain known as Iron Mountain. As recited by the court in his findings, there are many black or iron colored mountains in this immediate area and the only witness testifying on that subject was Tom Shackelford, 60 years of age and who had lived and ranched in the vicinity since 1901. He knew of no one mountain known as Iron Mountain. The engineers merely took a reading on a black mountain that fit the calls in Gano's field notes.

The same old-time resident, Tom Shackelford, and the engineer witnesses testify Stairway Mountain is from two and a half to three miles long. Shackelford, Ball and Simpson testify there is a stairstep formation at the south end of the mountain. Shackelford says that is known as Stairway Peak. Stovell testified this peak, nor the highest peak on the mountain, cannot be seen from the Hunnicutt Corner, but only the rim-rock and a crag on the rim-rock, and that he took his reading on the highest visible peak from the Hunnicutt Corner. The record thus supports the trial court's finding of the uncertainty of the Stairway Peak call.

If these be eliminated, as the trial court did eliminate them, then there is left the course and distance call from the N. W. Corner of Survey 1, Block 21, G. H. & S. A. Ry. Co. The trial court found that Gano ran on the ground the 18th traverse pictured on his map filed January 2, 1882, from the N. W. Corner of Survey 1, Block 21. This is, we think, evident. The record is if the traverse be retraced according to the calls thereon, or according to the so-called self-correcting errors (and the corrections have many times been made and seem to be necessary to reach the overall call "N. 38–1/6 W. 67,657 varas"), the Hunnicutt Corner will not be reached.

■ It is conceded, we take it, this traverse, as found by the court, can be run on the ground. Stovell ran part of it. Simpson undertook to pick it up at what is described as the "Isolated Hill" and ran it to its southern extremity, and arrived at a point 312.3 varas distant from the corner fixed by the trial court. The testifying engineers are in substantial, if not complete agreement as to the location of the S. E. Corner of Block 237, T. & St. L., located from ground work done by Thompson and corners identified by both Stovell and Simpson which still stand. It would serve no purpose to set out here at any considerable length the evidence upon which the location is based. It is proved in this case that Thompson began his work at the N. W. Corner of Survey 1, Block 21, G. H. & S. A. Ry. Co. His footsteps are followed on the ground from that point of beginning to a point known in this record as the "Cat Claw Corner" and shown on the several maps of the Surveyor as the N. W. Corner of Survey 1, Block 234, T. & St. L. Ry. Co. It is almost exactly 12 miles North and 13 miles West of the point fixed by the trial court as the S. W. Corner G–1 and S. E. Corner of 237. There are a number of interior Thompson Corners found and identified and much evidence of his footsteps. From Cat Claw Corner the engineers locate the S. E. Corner of 237 at about the exact spot the trial court fixes it. We, therefore, conclude if the trial court is not compelled to locate the common corner of G–1 and 237 (File No. 2) as he did, he was fully justified in so doing.

■ Courts are not in all situations under the necessity of giving preference to calls in the order of dignity. In some circumstances those of less dignity will be preferred. Stafford v. King, 30 Tex. 257, 94 Am.Dec. 304. The rule laid down is repeated in Huff v. Crawford, 89 Tex. 214, at page 223, 34 S.W. 606. To the same effect is Goodson v. Fitzgerald, 40 Tex.Civ. App. 619, 90 S.W. 898, also Luckett v. Scruggs, 73 Tex. 519, 11 S.W. 529. Based upon texts and authorities of similar import, Judge Lewis in his Lectures on Real Estate, page 113, states the rule thus: "Courts will usually give preference to the calls in order of dignity and reliability, yet they will not do so when, in the light of all the evidence, to do so would be to sacrifice to a rule the actual location of the land."

■ The record in this case is such as to justify the application of this rule, if not to compel it.

■ The plaintiffs take the position all the G Blocks and M–2 surveyed by John T. Gano between May, 1881 and May, 1882, constitute a system and that the calls in the junior blocks apply to the senior block

G–1, and may be looked to for its location. This cannot be sustained. The claim of a system is based upon the claim they constitute one continuous piece of work. G–1 was surveyed in May and June, 1881, and the field notes returned and filed in September of that year. The next blocks in point of time are G–13, 14 and 15. These were surveyed in November, 1881, and different chain carriers used than those that carried them for G–1. As said in one of the cases cited by the plaintiffs, Brooks v. Slaughter, Tex.Civ.App., 218 S.W. 632, at page 635, quoting from another cited case, it is not necessary to constitute a block of surveys a system that the work be done on the same date, but it is sufficient if it be continuous from day to day, and continued for many days, weeks or months. In Hamman v. San Jacinto Rice Co., Tex.Civ.App., 229 S.W. 1008, at page 1013(3), it was held that surveys made by the same surveyor in the same month and that most of them call for each other, did not constitute a system. This is based in part at least upon a lack of continuity of work. When Gano made the survey of G–1, he could have hardly known he would be called upon to survey the junior blocks, because the applications and files were not laid on the first of them, G–13, 14 and 15, until September, 1881, the month Gano returned and filed his field notes for G–1.

We are of the opinion there is no error in the judgment of the trial court and it is affirmed.