IN THE

# APPELLATE COURT

OF THE

## STATE OF INDIANA,

AT INDIANAPOLIS, NOVEMBER TERM, 1901, AND MAY TERM, 1902, IN THE EIGHTY-SIXTH YEAR OF THE STATE.

---

### EUREKA BLOCK COAL COMPANY *v.* WELLS.

[No. 3,760. Filed October 4, 1901. Rehearing denied April 29, 1902.]

MASTER AND SERVANT.—*Negligence of Mining Boss.*—*Assumption of Risk.*—*Proximate Cause.*—A mining boss failed to examine the mine as required by §7479 Burns 1901, and without plaintiff's knowledge the wall between the places where coal was being mined became so thin that a charge of powder used in mining blew it out, and plaintiff was injured. *Held*, that the risk was not one assumed by the employe, and that the proximate cause of the injury was the negligence of the boss in permitting the wall to become so thin that it could not withstand the force of an explosion, and in permitting a charge to be placed where he was bound to know that it would blow through and injure any one near that point. *pp. 1-8.*

SAME.—*Negligence.*—*Fellow Servant.*—Where the master is negligent he is responsible although the negligence of a fellow servant may have concurred in bringing injury upon plaintiff. *p. 6.*

DAMAGES. — *Instruction.* — *Personal Injuries.* — An instruction in an action for personal injuries that if the jury found for plaintiff the damages should be assessed on the basis of compensation for the injuries sustained, and, in doing so, they should take into consideration the question as to whether the plaintiff was temporarily or permanently injured, his physical and mental suffering, loss of

time, if any, occasioned by the injury, expense, if any, incurred in employing a physician to treat his injuries, and the expense incurred, if any, in nursing, and award him such damages as would compensate him for his injuries, in any sum not exceeding the amount demanded, is not objectionable as giving the jury unrestricted latitude to assess plaintiff's damages without reference to the evidence in the case   *p. 8.*

EVIDENCE.—*Conclusion of Witness.*—*Mines.*—*Personal Injuries.*—In an action by a mine employe for personal injury caused by an explosion of powder blowing out a wall in the mine, a question propounded to plaintiff as to the duty of the bank boss in looking after the rooms and entries, and seeing that the walls were kept at the proper thickness, was proper as calling for facts, and not a conclusion of the witness.   *p. 9.*

WITNESSES.—*Expert Testimony.*—*Discretion of Court.*—The decision of the trial court in refusing to permit a witness to testify as an expert will not be reversed except for plain error.   *pp. 10, 11.*

From Putnam Circuit Court; *S. M. McGregor*, Judge.

Action by John A. Wells against the Eureka Block Coal Company for damages for personal injuries sustained in a coal mine. From a judgment for plaintiff, defendant appeals. *Affirmed.*

*J. E. Lamb* and *J. T. Beasley*, for appellant.

*S. D. Coffey, A. W. Knight* and *G. A. Knight*, for appellee.

COMSTOCK, J.—Action for personal injury, begun in the Clay Circuit Court, and upon change of venue tried in the Putnam Circuit Court. A verdict was returned and judgment rendered thereon in favor of appellee for $5,000. The errors assigned are the overruling of appellant's several demurrers to the first and second paragraphs of complaint, and its motion for a new trial.

The first paragraph may be summarized as follows: The defendant is, and was on the 8th of July, 1898, and prior thereto, a corporation. At the date of the accident it was engaged in the business of mining coal in Clay county, Indiana. It employed 150 men in its mine. In order to mine and remove coal, the defendant sank a shaft from the surface of the earth to the bed of coal about eighty-five feet beneath

the surface. The coal was hoisted through this shaft. In the course of mining, lateral horizontal excavations were made in the coal stratum. These excavations were called rooms and entries. There was a main entry running from the shaft, and side entries running from the main entry. There was a side entry northwest of the shaft, running north. There was another entry connecting with the north entry, running in a southwesterly direction. In the course of its operations the defendant, prior to the plaintiff's alleged injuries, caused an excavation to be made in the coal stratum on the north entry within ten feet of the south line of the entry running westerly from the west side of the north entry. On the day of the plaintiff's alleged injury, the defendant, by its employes, was mining coal in the room or excavation aforesaid. The safety of the men in the rooms required that the rooms or excavations near the entries, and running in the same direction, should run parallel therewith, and that there should be a stratum or pillar of coal left standing between the excavations of from ten to twelve feet in thickness in order to prevent the mine from caving in, and to prevent explosions from shots of powder, used in mining the coal, from injuring the employes in the mine. It was the duty of the defendant to keep in its employ a competent mine boss, whose duty it was to visit and examine the various excavations and working places in the mine at least every alternate day while the mine was in operation, and to see that the safety of the company's employes was assured. It was the duty of this defendant and its mining boss to plan and lay out the excavations in the mine so that the pillars between the excavations in the mine should be and remain of the thickness and safety aforesaid. On the day of the accident plaintiff was in the entry running in a southwesterly direction, at a safe distance from a shot of powder which had just been exploded in the room above referred to, in the line of his duty as an employe of the defendant. He had no knowledge of the unsafe condi-

tion of the pillar between the said room and the entry. The defendant, at that time and for many weeks prior thereto, had in its employ a mining boss, but that boss did not visit the room in question each alternate day, or on any day, nor did he see that safety was assured in the entry where the plaintiff was, nor did he prevent the plaintiff from going into the entry where he was injured, nor did the mine boss or the defendant see that the pillar of coal in question was maintained at the requisite thickness; but that the defendant and the mine boss carelessly and negligently refused to perform any of their said duties, and that they so carelessly laid out and planned the line of the room in question that the north line thereof converged as the excavation advanced, so that the pillar between the room and the entry was dangerously weak and thin, to wit, only four feet and ten inches in thickness. With the knowledge that said pillar was so dangerously weak and thin, the defendant and its mine boss assigned one James O'Brien to work in such room. O'Brien was ignorant of the thin and unsafe condition of the pillar, and without the experience necessary to ascertain its condition. While working in the room in the discharge of his duties, he drilled a hole into the pillar at the point where it was four feet and ten inches thick, and placed powder therein for the purpose of shooting down the coal in the usual way. By reason of the unsafe condition and thinness of the pillar, the explosion of powder, which O'Brien put into the same, broke through the pillar into the entry, and threw the coal, slate, and debris against the plaintiff with such force and violence as greatly to injure him. It is averred that the injury was without any fault or negligence on the part of the plaintiff, and while he was in the exercise of due care and caution on his part to avoid injury.

Counsel for appellant contend (1) that the plaintiff's injury was due to one of the assumed risks of the business; (2) that the complaint affirmatively shows the plaintiff's

injury not to have been the proximate result of the alleged negligence of the defendant.

Appellant owed to appellee the duty of keeping the passageways in its mine safe to use. Appellee was injured in a passageway. Section 7479 Burns 1894, §5480t Horner 1897, requires every operator of a coal mine to "employ a competent mining boss, * * * to carefully watch over the * * * airways," etc. Section 7472 Burns 1894, requires that the "mining boss shall visit and examine every working place in the mine at least every alternate day while the miners of such place are, or should be at work, and shall examine and see that each and every working place is properly secured by props or timber, and that safety in all respects is assured," etc.

The complaint alleges that appellant was under a duty to appellee to furnish him a safe place to work; and it appears from the complaint that this duty, due at common law and under the statute, appellant neglected to discharge. The risks a servant assumes upon entering the employment of a mine are those which occur after the due performance by the employer of those duties which the law imposes upon him. 1 Bailey's Per. Inj., §463.

In *Parke County Coal Co.* v. *Barth,* 5 Ind. App. 159, 162, this court said: "One engaged as a coal miner, to dig out coal in a mine, has a right to assume, in the absence of apparent defects, that a passageway provided in the mine by his employer, through which it is necessary for the employe to pass in going to and from his working place in the mine, has been constructed and is maintained with such skill, prudence, and caution that it is safe for such use; and he is not bound to inspect it, or to search therein, for the purpose of discovering latent and hidden defects which render it dangerous for such use. See Wood on Master and Serv., §326 *et seq.; Reilman* v. *Stolte,* 120 Ind. 314; *Louisville, etc., R. Co.* v. *Graham,* 124 Ind. 89; *Cincinnati, etc., R. Co.* v. *Roesch,* 126 Ind. 445; *Taylor* v. *Wootan,* 1 Ind. App.

188, 50 Am. St. 200; *Louisville, etc., R. Co.* v. *Berry,* 2 Ind. App. 427." See, also, *Hancock* v. *Keene,* 5 Ind. App. 408; *Linton Coal Co.* v. *Persons,* 11 Ind. App. 264; *Linton Coal Co.* v. *Persons,* 15 Ind. App. 69; *Island Coal Co.* v. *Risher,* 13 Ind. App. 98. Besides, assumption of risk implies a knowledge of the danger. The complaint shows that appellee did not have knowledge of the danger.

In *Parke County Coal Co.* v. *Barth, supra,* it is said: "In pleading, for the purpose, not of showing the absence of contributory negligence on the part of the employe, but of charging actionable negligence on the part of the employer by showing a risk existing through his negligence, and not assumed by the employe, it should be shown that the employe did not have knowledge of the risk." It is held that "It is not necessary to allege facts showing affirmatively that the employe had no means of ascertaining the defect; it is sufficient to allege that he had no knowledge of the defect." See, also, *Lake Shore, etc., R. Co.* v. *Stupak,* 108 Ind. 1; *Indiana, etc., R. Co.* v. *Dailey,* 110 Ind. 75; *Louisville, etc., R. Co.* v. *Sandford,* 117 Ind. 265; *Brazil Block Coal Co.* v. *Young,* 117 Ind. 520; *Louisville, etc., R. Co.* v. *Corps,* 124 Ind. 427, 8 L. R. A. 636; *Rogers* v. *Leyden,* 127 Ind. 50; *Ohio, etc., R. Co.* v. *Pearcy,* 128 Ind. 197; *Peerless Stone Co.* v. *Wray,* 143 Ind. 574; *Kentucky, etc., Co.* v. *Eastman,* 7 Ind. App. 514; *Pennsylvania Co.* v. *Brush,* 130 Ind. 347.

The difference between the first and second paragraphs of complaint is that the second paragraph charges the injury to appellee to be the result of the combined negligence of O'Brien and appellant. Where the master is negligent, he is responsible, although the negligence of a fellow servant may have concurred in bringing injury upon the plaintiff. *Rogers* v. *Leyden, supra.* Each paragraph alleges that appellee had no knowledge of the danger or defect which caused his injury. As against a demurrer, this sufficiently shows that the appellee did not assume the risk. And each

paragraph shows a duty toward the appellee and a failure of its performance.

Does the complaint show that appellant's negligence was the proximate cause of appellee's injury? In *Louisville, etc., R. Co.* v. *Lucas,* 119 Ind. 583, 590, 591, 6 L. R. A. 197, it is said: "As the authorities all declare, if the injury resulted from the negligent act of the defendant, that act will be deemed the proximate cause unless the consequences were so unnatural and unusual that they could not have been foreseen and provided against by the highest practicable care." See, also, *Ohio, etc., R. Co.* v. *Trowbridge,* 126 Ind. 391.

The proximate cause of the injury was a thin pillar of coal which could not resist the force of the explosion, and permitting a shot to be put in it at a point where appellant was bound to know that it would blow through the entry, injuring any miner who happened to be in the entryway near that point. The thin condition of this pillar of coal could not be detected by the miner, except by a careful inspection. Such inspection the miner was not bound to make; his employer was. The result which followed, in the case at bar, the alleged acts of negligence, was one reasonably to have been anticipated.

The motion for a new trial is discussed in the able brief of appellant's counsel under three heads: (1) The verdict of the jury is contrary to law and not supported by sufficient evidence; (2) error of the court in giving and refusing to give instructions; (3) error of the court in the admission and rejection of evidence.

As to the first reason for a new trial, there is evidence to show that appellee, when injured, was in the employ of appellant, was in a place where he had a right to be, in a passageway of appellant's mine, and was injured by the negligence of appellant. The case of *Wright* v. *Rawson,* 52 Iowa 329, 3 N. W. 106, 35 Am. Rep. 275, cited by appellant, is one in which the injured party was not engaged in

work for the defendant, but was visiting a miner in his work. In the case at bar, appellee was not a volunteer. The Iowa case is not in point.

Upon the second reason for a new trial, counsel for appellant state that instructions, given by the court at the request of appellee, numbered three, four, five, six, and seven were each improperly given, because neither of them is applicable to the issues and the evidence. This position of counsel is not well founded. It is urged that instruction numbered ten is objectionable, because it gave the jury unrestricted latitude to assess the plaintiff's damages without reference to the evidence in the case. The instruction is as follows: "If you find for the plaintiff in this cause, it will be your duty to assess his damages. The damages should be assessed on the basis of compensation for the injuries sustained. In doing so you should take into consideration the question as to whether the plaintiff is temporarily or permanently injured, the question of his physical and mental suffering, the loss of time, if any, occasioned by his injury, the expense, if any, incurred in employing a physician or surgeon to treat his injuries, the expenses incurred, if any, in nursing, and should award him such damages as will compensate him for his injuries in any sum not exceeding $10,000." The jury could only have understood from this instruction that appellee was only entitled to recover compensatory damages.

Appellant requested the court to give a series of instructions, nineteen in number. They were all given but the seventh. The refusal to give this instruction is made the third reason for a new trial. Instruction nineteen so requested and given was upon the measure of damages. In it the jury were expressly told that they could not award the plaintiff anything by way of speculative damages or by way of punishment of the defendant, and that he was only entitled to recover for actual damages. The two instructions were not inconsistent, and upon the measure of damages the jury

could not have been misled.   In several instructions the jury
were told that the burden was upon the plaintiff to prove
the material allegations of at least one paragraph of his
complaint by a preponderance of the evidence; and those,
framed hypothetically, begin with "if from the evidence."
It is scarcely conceivable that, considering all the instruc-
tions given, the jury could have got any other impression
than that they were to be controlled by the evidence.   Coun-
sel for appellee insist that said seventh instruction was cor-
rectly refused, "if for no other reason than because there
was no evidence upon which to predicate it."   There is not
evidence to support the instruction in its details.   Besides,
the appellant, in view of the full instructions given by the
court upon contributory negligence, assumption of risk, and
the reciprocal duties of the employer and employe, was not
harmed by the court's refusal.

The ninth is the next reason for a new trial discussed by
appellant's counsel.   It is based upon the ruling of the court
in permitting plaintiff, while testifying in his own behalf,
to answer the following question: "You may tell the jury
what duty the bank boss has to perform in relation to look-
ing after those rooms and entries, and seeing that the walls
are kept at the proper thickness."   The witness answered:
"It was his duty to see that these are kept at the proper
thickness."   The objection made to the question was that
it called for a conclusion.   It will be observed that the ques-
tion was not whether the boss had performed his duty, but
what his duty was in reference to certain matters.   The ques-
tion called for facts.

The following question was, over the objection of appel-
lant, asked the witness Curns: "What duty has he [the bank
boss] to perform about seeing that the rooms are kept paral-
lel with the entries, and the walls kept the proper thick-
ness?"   The objection made was that it was suggestive.   The
witness answered:   "Yes, it is his duty to look after that."
The answer seems to indicate that it was suggested by the

form of the question. The answer in part was not responsive. A motion to strike out would doubtless have been sustained. As the motion was not made, the trial court might reasonably have thought appellant was satisfied with it.

Upon cross-examination of one Fisher, a witness in behalf of plaintiff, defendant's counsel propounded to him the following question: (19) "Do you know of any case in which it would be proper for a miner to drill a hole into a pillar of coal, put a shot of powder in, and fire it off, after the room is widened and the pillar is left between the room and the entry, except for the purpose of making a break-through? (19½) As a practical miner, do you know of any occasion which a miner, in the ordinary occupation of coal mining, such as the one in question, would have to put a shot of powder into a pillar of coal between a room and an entry, if the room had been widened the proper length, except for making a break-through?" An objection to each was sustained, and proper exceptions taken. As O'Brien, who put in the shot, testified that he did it for the purpose of knocking coal down, it was immaterial what miners at other times or in other places would do. In addition, the question called for an opinion.

Thomas Dalton, a witness for appellant, was asked "Who had charge of the laying off of rooms and pillars and work in the mine?" to which appellee's objection on the ground that it was immaterial was sustained. The charge of negligence was that the particular pillar of coal was negligently suffered to converge toward the entry and become too thin for mining coal, and that shots placed in it were likely to, and did, break through and injure appellee, and that it was the duty of appellant and its mine boss to see that these entries were reasonably safe. The exclusion of evidence, therefore, as to who had laid off the rooms, could not have harmed appellant.

The twenty-ninth and thirty-first reasons for a new trial are the remaining reasons for a new trial discussed. They re-

late to the refusal of the court to permit George S. Patterson and Thomas Dalton to testify as experts, in response to appropriate questions, as to whether the pillar in question was safe. As to Patterson, the objection was that he had not shown himself competent to answer the question, as a practical coal miner. No precise degree of knowledge to be possessed by a witness to give expert testimony is fixed by the law. "A considerable degree of discretion is vested in the trial judge, in determining whether a witness shall be permitted to testify as an expert, and his decision will not be reversed on appeal except for plain error." Gillett's Ind. and Collat. Ev., §209. See Lawson on Expert and Opinion Ev., 236. We can not say that there was an abuse of discretion as to this witness. The question propounded to the witness Dalton was: "From your examination of this pillar since the accident, taking the condition you saw it, would you regard that as a safe and proper pillar ?" The objection was general. The witness had testified, without any objection being made, that the pillars in the mine were from five to eight feet in thickness, and, as a practical miner, that they were safe, although, in answer to a subsequent question, he said he had not seen the particular pillar before the accident. The jury had before them the fact as to the thickness of the pillar when it was drilled, and the result of the explosion, and the opinion of a witness, in the presence of facts and results, could not have aided them.

We find no error for which the judgment should be reversed. Judgment affirmed.

Roby, J.—Concurring. The conclusion reached is correct, whether the complaint counts upon the common law duty of the master, or upon the coal miner's act, §§7472, 7479 Burns 1894.

If the latter theory is adopted, then the discussion relative to "the assumption of risk" is inapplicable, for the reason, in my opinion, that the legislature has fixed a specific

and defined duty upon the employer, necessary to the safety of the employe, and with the performance of which he stands charged. The penalty for violation of such a law can not be assumed by the person for whose protection it is designed, nor can the wrong-doer be permitted to nullify the statute directly or indirectly.