McCARTHY, Appellant, *v.* ANACONDA COPPER MIN-ING CO., Respondent.

(No. 5,423.)

(Submitted March 12, 1924.   Decided April 19, 1924.)

[225 Pac. 391.]

*Personal Injuries — Riots — Sheriffs — Failure of Proof—Evidence—Conclusions—Cross-examination—Trial—Continuance —Discretion.*

Trial—Continuance—Absent Witnesses—When Refusal not Abuse of Discretion.
   1.   In denying a motion for a continuance on the ground of absent witnesses the court did not abuse its discretion where movant did not show that he had used due diligence in procuring the desired evidence (Rev. Codes, sec. 9332), nor set forth that if a continuance were granted he would be able to secure the personal attendance of the witnesses or their evidence at a subsequent time, and his assertion of what be "believed" the witnesses would testify to was fairly met by counter-affidavits.

Sheriffs—Authority in Summoning *Posse Comitatus* During Riot.
   2.   Whether a sheriff needs the assistance of a *posse comitatus* to suppress a riot is a matter left to his judgment; in summoning it he presumably acts within his authority; he is commander of all he summons to his aid and all under his command are in duty bound to obey his lawful orders.

Evidence—Authority of Agent—Admissibility.
   3.   Where a question involves a fact within the knowledge of the witness and not the expression of an opinion or conclusion the testimony is admissible, and therefore an agent is a competent witness on the question of his authority as such.

Same—Conclusions—Admissibility—Discretion.

4.  Whether testimony objected to as a conclusion is such is a matter for the practical discretion of the trial judge and unless there is a clear showing of abuse thereof its action in admitting it will not be held erroneous.

Same—Powers of Agent—Admissibility.

5.  Under the above rules (pars. 3, 4), *held*, that the testimony of one who had general supervision of mine guards during a strike prior to their being sworn in as a *posse comitatus* to suppress a riot, as to what orders he gave to the men under him, what his purpose was in giving them, in what capacity the men under him acted and the nature of their duties, was properly admitted over the objection that the questions called for the conclusions of the witness.

Same—Scope of Cross-examination.

6.  Where matters inquired into on cross-examination are relevant to the subject matter of the examination in chief and of informative value to the jury upon the question under consideration, the cross-examination is proper.

Same—Conclusions—Inadmissibility.

7.  A question asked a witness whether he had seen plaintiff in an action for damages for personal injuries occasioned by being shot during a riotous demonstration by alleged mine guards, in the crowd giving any provocation for the shooting, called for the conclusion of the witness and was properly excluded.

Same—Exhibits—Bullets—When Inadmissible.

8.  Refusal to permit a bullet said by plaintiff to have been taken from his body, the assertion being based upon the hearsay statement that the surgeon who extracted it had told him so, to be introduced in evidence as an exhibit, was proper for absence of proper identification of it as coming from plaintiff's body.

Personal Injuries—Failure of Proof—Directed Verdict Proper.

9.  Evidence in an action to recover damages for personal injuries sustained in plaintiff being shot by a mine guard of defendant company during a riot, where the defense was that the guards had been sworn in by the sheriff as a *posse comitatus* and therefore were not acting in defendant's behalf at the time of the affray, *held* to sustain defendant's contention that there was a failure of proof and that the court properly directed a verdict in its favor.

*Appeal from District Court, Silver Bow County; Joseph R. Jackson, Judge.*

Action by John McCarthy against the Anaconda Copper Mining Company.  Judgment for defendant and plaintiff appeals. Affirmed.

*Mr. Timothy Nolan, Mr. George Bourquin* and *Mr. Harlow Pease,* for Appellant, submitted a brief and one in reply to that of Respondent; *Mr. Nolan* and *Mr. Pease* argued the cause orally.

*Mr. L. O. Evans, Mr. W. B. Rodgers, Mr. D. G. Stivers, Mr. D. M. Kelly* and *Mr. John V. Dwyer,* for Respondent, submitted a brief; *Mr. Dwyer* argued the cause orally.

MR. CHIEF JUSTICE CALLAWAY delivered the opinion of the court.

The plaintiff sued the defendant for damages resulting from a gunshot wound received by him on April 21, 1920. He charged that on that day and for a long time prior thereto the defendant, in connection with its mining operations in Silver Bow county, and for other purposes unknown to him, employed a large number of armed men whom it supplied with firearms "to be used by said employees in the course of their employment by discharging them upon and into human beings"; that on that day and while the plaintiff was upon a public road the "said armed employees of the defendant, acting within the scope of their employment, and without cause or provocation or any excuse therefor, did willfully, wickedly, maliciously and oppressively shoot plaintiff in the back," to his damage, *etc.* Issue was joined by answer June 2, 1922. After the answer was filed the plaintiff moved for a change of venue which was denied.

1. On February 3, 1923, counsel for plaintiff announced that [1] he desired the cause set for trial during the jury term then being held. He asked that it be set three weeks in advance in order that he might secure testimony from witnesses outside the state. On the 10th of February and again on the 17th of February he renewed his application to have the case set. Upon the latter date the case was assigned for trial on the twelfth day of March, 1923. On March 5 counsel for plaintiff upon his own affidavit moved for a continuance on account of the absence of witnesses. This was opposed by the affidavits of two of defendant's counsel. The court overruled the motion. This action is assigned as error.

But little argument is advanced to support the specification and no authority is cited. A recitation of the contents of the affidavits will not be useful. It is enough to say, first, that the plaintiff did not show that due diligence had been used to procure the desired evidence as required by section 9332, Revised Codes of 1921; second, he did not even allege that if the continuance were granted he would be able to secure the personal attendance of the witnesses, or their evidence, at a subsequent time (*Bean* v. *Missoula Lumber Co.*, 40 Mont. 31, 104 Pac. 869; *Meredith* v. *Roman*, 49 Mont. 204, 141 Pac. 643; *Hunt* v. *Van*, 61 Mont. 395, 202 Pac. 573; *Davenport* v. *Davenport*, 69 Mont. 415, 222 Pac. 422); and, third, his weak showing of what he "believed" the witnesses would testify to was fairly met by the opposing affidavits. Plaintiff did not make a showing sufficient to invoke the court's discretion in his behalf, and he therefore is not in a position to urge error in the court's ruling. "The power to grant or refuse a postponement on any ground is vested in the discretion of the court. (Rev. Codes, sec. 6729.) Its exercise in any case is not subject to review by this court, in the absence of an affirmative showing that the complaining party has suffered prejudice. (*Dorais* v. *Doll*, 33 Mont. 314, 83 Pac. 884; *Jorgenson* v. *Butte etc. Co.*, 13 Mont. 288, 34 Pac. 37; *Montana Ore Pur. Co.* v. *Boston & Mont. etc. Co.*, 27 Mont. 288, 70 Pac. 1114, 22 Morr. Min. Rep. 471; *Christiansen* v. *Aldrich*, 30 Mont. 446, 76 Pac. 1007.)" (*Downs* v. *Cassidy*, 47 Mont. 471, Ann. Cas. 1915B, 1155, 133 Pac. 106.)

2. On April 21, 1920, a strike directed against the defendant [2] by the Industrial Workers of the World was in progress. Several hundred men, including the plaintiff, were congregated on Anaconda road, adjacent to the property of the defendant, for the purpose of making a demonstration in order to influence those who then were working for the defendant to give up the work. The record is somewhat meager as to the character of the demonstration. The witnesses refer to the strikers as "a crowd," "a mob." It is conceded that "there was a

[70 Mont. 309.]
good deal of turmoil and excitement; there was a good deal of hollering."

The demonstration was of such a character as to cause the sheriff to assemble a force of men there to preserve the peace. He was present in person with a number of deputies and policemen. He also summoned to his aid certain employees of the defendant, whom we shall refer to as the "mine guards." The record discloses that for some time, probably some years, before this occurrence the defendant had maintained a force of men to protect its properties. On the day in question these men were armed with a weapon known as a trench or riot gun. This is a short-barreled repeating shotgun. The shells used carried buckshot. Guns and ammunition were furnished to the mine guards by the defendant. During the demonstration above referred to shots were fired against the strikers, and plaintiff received a bullet, a buckshot, he contends, fired from a gun in the hands of a mine guard.

Whether it was necessary for the sheriff to assemble his deputies, the policemen, and the employees of the defendant as a *posse comitatus* we need not inquire. Presumably the sheriff was acting within his authority; and he was the one to judge whether he needed help to preserve the peace. It was his duty to prevent and suppress breaches of the peace, riots and insurrections, and to command the aid of as many male inhabitants of his county as he thought necessary to execute that duty. (Sec. 4774, Rev. Codes 1921.) Upon such an occasion the sheriff is the commander of all he summons to his aid and all under his command are in duty bound to obey his lawful orders.

At the trial Daniel G. Stivers, a witness for the plaintiff, on [3-5] direct examination testified that on the day in question the mine guards of the defendant were under his supervision "until they went down on Anaconda road under orders of the sheriff." There were other persons under Stivers who had supervision over the mine guards—W. J. McClain and J. A.

Ryan. McClain had control over the mine guards in obedience to Stivers' orders. McClain was foreman over all the mine guards in general; he "did not go on the hill very much; John Ryan was in charge of the camp." Ryan was the officer under McClain in charge of the men on the hill as well as of the barracks. The witness saw McClain, Ryan and some of the other mine guards on Anaconda road at the time of the shooting but he did not actually see any one fire a shotgun there that day. He heard reports of what he took to be shotguns. These persons were in the employ of the defendant a part of the time on April 21, 1920. The witness said: "As to being paid by somebody else on that day I never asked the sheriff to pay, because I knew he could not do it, as the law prohibits members of a posse getting pay for their services." Upon cross-examination he testified that these mine guards were summoned by the sheriff. The sheriff informed Stivers that "conditions existed that he could not meet, that he was forced to ask for assistance and he summoned the men who worked for the Anaconda Company as guards to his assistance."

The assignments of error upon which plaintiff mainly relies for a reversal are based upon the court's rulings during the cross-examination of plaintiff's witnesses, and to these we now address our attention. Stivers was asked by counsel for defendant: "Q. Did you, or anyone under your jurisdiction, order or authorize these men, as employees of the Anaconda Company, to go to Anaconda road or about the place where this shooting occurred? Mr. Nolan: To which we object. Calling for a conclusion of the witness. The Court: The objection is overruled. A. I did not." The question was objectionable in so far as it called upon the witness to testify as to whether anyone under his jurisdiction ordered or authorized the men, as employees of the Anaconda Company, to go to Anaconda road, *etc.*, without first showing that the witness had personal knowledge of the very matter. The use of the word "jurisdiction" was not happy but we cannot see that it had any tendency to

mislead or to cause any misunderstanding of what was being inquired about. The answer to the question, however, obviated the error. The witness answered only respecting his personal knowledge, "I did not." This it was competent for him to do, as will be further illustrated in discussing the questions, answers and rulings which now follow: "Q. Were these men, or any of them, down on Anaconda road under your jurisdiction at the time? Mr. Nolan: Same objection. The Court: Same ruling. A. They were not. Q. Were they down there as employees of the Anaconda Company? Mr. Nolan: Same objection. The Court: Same ruling. A. They were not. Q. Why were they down there, if you know? A. They had been summoned by the sheriff as a posse. Q. Had you been summoned by the sheriff? A. I had. Q. In what capacity were you on Anaconda road on April 20, 1920? Mr. Nolan: Objection. Calling for conclusion of the witness as to the capacity that he occupied. The Court: Overruled. An exception may be noted. A. I was a member of the posse summoned and ordered by the sheriff to be there. I am referring to the sheriff of Silver Bow county. Q. So far as your jurisdiction went, as to the person in charge of the mine guards, was that true as to those men? Mr. Nolan: We object. Calling for opinion of the witness. The Court: I don't quite get that. Mr. Kelly: Whether under the jurisdiction of him or the sheriff. The Court: The objection is overruled. Note an exception. A. Wholly and entirely under the jurisdiction of the sheriff. By Mr. Nolan: We move to strike any testimony with reference to employees of the Anaconda Company being under the jurisdiction of the sheriff, on the ground that it is based on hearsay, based on a conclusion of the witness, not supported by any facts. The Court: Motion is denied. An exception may be noted."

The court's rulings were correct. Plaintiff's contention that these questions called for the conclusions of the witness is not tenable. In answering them the witness testified to facts within his own knowledge. He did not testify from his opin-

ions or from what he thought or what he believed; he testified from what he knew. He had real and positive grounds of knowledge. He was, so his testimony indicates, the person highest in authority over the men—their commander in chief—until they were turned over to the sheriff. It is idle to say that one in such position may not testify as to what orders he gave to his men, what his purpose was in giving the orders, and in what capacity the men under him acted. In so testifying he does not give his opinions or his conclusions, but facts within his personal knowledge. The witness knew whether he authorized the mine guards to go to Anaconda road or about the place where the shooting occurred; he knew whether they were under his control at the time; he knew they were not, for he knew they were under command of the sheriff. He knew they were not there as employees of the Anaconda Company. As their superior officer he knew they were not acting under his orders. He knew of his own knowledge that he was a member of the posse summoned by the sheriff, that the men had been summoned by the sheriff, were under the sheriff's orders and consequently under the sheriff's control.

The same may be said to a considerable extent respecting questions asked the witness McClain, to which similar objections were interposed. For instance, after McClain had stated he turned the men over to the sheriff's orders, he was asked, "Were you or any of your men there on that day as employees of the Anaconda Company?" The objection was made that the question "plainly called for an opinion." The question was too broad, but the witness answered it, "I was not personally, I know that." Then he was asked, "Did you direct anybody else to go there as an employee of the Anaconda Company?" to which the same objection was made, followed by the same ruling, and he answered, "I certainly did not." Here he stated a fact within his own knowledge. Again, "Did you have charge of any men there on that day as representing the Anaconda Company that day?" This was objected to as

[70 Mont. 309.]

a conclusion. The witness answered, "I had absolutely no charge over any men after I met the sheriff. I turned them over to him. The men I took with me I took for that purpose, at his request, and the request of the chief deputy." Here the witness testified to a fact within his own knowledge. Certainly it cannot be said that the witness was dealing with a conclusion when he said he had no charge over his men after he met the sheriff and turned them over to him. He was obeying the law of the land when, at the request of the chief deputy sheriff, he delivered to the sheriff the men under his command. Another question in somewhat different form was then asked, "And were you down there as a watchman for the Anaconda Company or as a member of the sheriff's posse?" This was objected to as calling for an opinion. He answered, "I was down there under the control of the sheriff." The witness certainly knew whether he was a member of the sheriff's posse, having been summoned by the sheriff to become a member of that posse and having subjected himself to the sheriff's orders. Then, "Under whose directions were you when you were on Anaconda road in this trouble?" This was objected to as calling for the opinion of the witness. The witness answered, "Under Sheriff O'Rourke's directions." The objection was overruled properly.

We shall not attempt to discuss the fallacies so common respecting opinion evidence. Those of an inquiring turn of mind will find the subject exhaustively treated by Mr. Wigmore in his work on Evidence (2d ed.), sections 1917–1929, inclusive. But this case is an illustration of the learned author's assertion that a mere catchword—"opinion" (and so its fellow "conclusion")—has caused much of error and vice of policy. (Sec. 1919.) The matter directly at hand may be made clear by several homely illustrations:

I, a farmer, loan my hired man to my neighbor to help in threshing. While he is still my hired man, he is subject to my neighbor's orders while doing that threshing and I am not

responsible for what he does in that service.    He may testify what his duties were while working for my neighbor.

The keeper of a garage may loan one of his employees to me for a week in order that I may take a trip to Glacier National Park with my family.    He still continues as an employee of the garage-keeper but while on the trip to the Park is subject to my orders and I am responsible for what he does in that service.    He may tell under whose orders he was during that time and what his duties were.

I, the commander of an armed force, may be called upon by the sheriff to help preserve the peace.    I obey orders with my company and turn them over to the sheriff.    After they are turned over to the sheriff they are subject to his orders, he being my superior officer as well as theirs.    (Sec. 11663, Rev. Codes 1921.)    Each member of the company may testify as to what his duties were while acting under the orders of the sheriff as well as what he did while in that service.

With respect to opinion evidence the rule is that a witness may testify directly to a composite fact though in a sense his testimony may be the result of his conclusion from other facts.    (10 Cal. Jur. 955.)    "The objection that proposed testimony states a conclusion only has sometimes obtained to a captious extreme, and the courts have often been obliged to distinguish between statements which are real conclusions and those which state facts of a composite nature."    (11 R. C. L. 571.)    A witness may testify whether he had certain authority and was charged with certain duties in his employment.    (11 R. C. L. 572, and cases cited.)    In *Western Stone Co.* v. *Muscial*, 196 Ill. 382, 89 Am. St. Rep. 325, 63 N. E. 664, the court said: "We regard the ruling of the court in this respect proper. The evidence objected to, which was introduced by plaintiff, related to the duties of the foreman.    This was clearly competent, and was a material element in the case to establish the relations which existed between appellee and the foreman and to what extent the appellee was subject to the foreman's orders.

This was not a conclusion of the witness, because his testimony was to the effect that he knew what the foreman's duties were, and he then proceeded to state those duties." (And see *Union Bank & Trust Co.* v. *Long Pole Lumber Co.,* 70 W. Va. 558, 41 L. R. A. (n. s.) 663, 74 S. E. 674; *Eureka Block Coal Co.* v. *Wells,* 29 Ind. App. 1, 94 Am. St. Rep. 259, 61 N. E. 236.)

An agent is a competent witness on the question of his authority. (*Nyhart* v. *Pennington,* 20 Mont. 158, 50 Pac. 413; *Union Bank & Trust Co.* v. *Long Pole Lumber Co., supra;* Mechem on Agency, 2d ed., sec. 291.)

Where "the question involves a fact clearly within the knowledge of the witness, and not the expression of an opinion upon facts proven, such question is admissible." (*Olson* v. *O'Connor,* 9 N. D. 504, 81 Am. St. Rep. 595, 84 N. W. 359; *Sweet* v. *Tuttle,* 14 N. Y. 465; *Knapp* v. *Smith,* 27 N. Y. 277.)

Mr. Jones observes: "Very often it is difficult to distinguish where fact ends and conclusion begins, and each case calls for the watchfulness of the presiding judge." (Commentaries on Evidence, sec. 376.)

"The true solution," says Ruling Case Law, "seems to be that it is a matter for the practical discretion of the trial court." (11 R. C. L. 571.) Certain it is that reversal will not be constrained, unless there is a clear showing of an abuse of judicial discretion. (See 10 Cal. Jur. 956.)

The witness Stivers, having testified that the mine guards were employed to protect the property of the company, was recalled for examination and asked to tell the nature of the property the men were employed to protect. Over the objection that the question was improper cross-examination and also [6] called for the opinion of the witness, he testified the fences inclosed extensive mining properties, power plants and compressor plants from which compressed air is distributed to the several mines and pumping stations and hoists, and all kinds of mining equipment. The fences were ten or twelve feet high at least. He was then asked whether the men under

his control as guards had any duties to perform by virtue of their employment outside of these fences. Over like objections he answered that they had not. None of these objections was tenable. The cross-examination was proper. The matter inquired into was relevant to the subject matter of the examination in chief, and clearly was of informative value upon the question under consideration. We again call attention to the rule: "The right of cross-examination extends not only to all facts stated by the witness in his original examination, but to all other facts connected with them, whether directly or indirectly, which tend to enlighten the jury upon the question in controversy, and this right should not be restricted unduly." (*State* v. *Howard,* 30 Mont. 518, 77 Pac. 50; *Kipp* v. *Silverman,* 25 Mont. 296, 64 Pac. 884; *Cobban* v. *Hecklen,* 27 Mont. 245, 70 Pac. 805; *Hefferlin* v. *Karlman,* 30 Mont. 348, 76 Pac. 757; Rev. Codes 1921, sec. 10665.)

Stivers, being the person in control of the mine guards, and from whom they took their orders, was qualified to say what the nature of their duties was.

Similar questions were met with similar objections and similar rulings, in which we find no error.

Plaintiff's counsel propounded this question to one of his [7] witnesses: "Did you see him," referring to plaintiff, "there that day or anybody with him, or in that crowd, giving any provocation to anybody who was armed with shotguns?" This was objected to as calling for the conclusion of the witness, and the objection sustained. Here was a clear instance of a question calling for a conclusion of the witness. The court ruled correctly.

3. Appellant alleges error to his prejudice for the reason [8] that the court refused to allow in evidence Exhibit 3, a leaden bullet. This, plaintiff testified, a surgeon at the Mayo hospital gave him following an operation. The surgeon said it came from plaintiff's body. This was hearsay; the bullet

was not identified as coming from plaintiff's body and its rejection as evidence was proper.

4. However, let it be assumed that this bullet was fired from [9] a shotgun in the hands of a mine guard. Still the plaintiff is no better off. This case might be summed up by saying that the plaintiff undertook to prove the allegations of his complaint that the armed employees of the defendant, acting within the scope of their employment and without cause or provocation of any excuse therefor, did willfully, wickedly, maliciously and oppressively shoot the plaintiff, and he signally failed to prove any of them. There was no testimony tending to prove that the mine guards at the time of the shooting were acting for the defendant or within the scope of their employment by the defendant. All the testimony indicates that the shooting was done by members of the sheriff's posse. The mine guards who were called to testify said they fired at the direction of Deputy Sheriff Wheeler, and by his direction they shot in the air. One of the witnesses for the plaintiff testified that Roy Alley, who was present on the occasion, gave the order to fire. In their brief counsel for plaintiff admit that the evidence does not connect Alley either with the defendant or with the sheriff.

5. There was a total failure of proof. The court did not err to plaintiff's prejudice in any of its rulings on the admission or rejection of evidence. The defendant did not offer any evidence but, submitting the case on the evidence introduced by plaintiff, moved for a directed verdict. The court sustained the motion. Thereafter the plaintiff's motion for a new trial was denied, and plaintiff appealed from the judgment. The court did not err in sustaining defendant's motion for a directed verdict nor in denying plaintiff's motion for a new trial.

6. The question as to whether the court erred in denying the motion for a change of venue because of the prejudice of the jurors of Silver Bow county need not be considered; the

plaintiff was unable to make out a case for submission to a jury. The judgment is affirmed.

*Affirmed.*

ASSOCIATE JUSTICES COOPER, HOLLOWAY, GALEN and STARK concur.