## TEXAS CO. v. ANDRADE et al.
### No. 11032.

Court of Civil Appeals of Texas. Dallas.
Sept. 3, 1932.

Rehearing Denied Oct. 1, 1932.

1064

H. S. Garrett and H. R. Wilson, both of Ft. Worth, for appellant.

W. E. West, of Canton, and Hamilton & Hamilton, J. P. Rice, and Lanham Croley, all of Dallas, for appellees.

LOONEY, J.

The Texas Company, claiming to own the determinable fee-simple estate to the oil and gas in and under a strip of land containing 3.67 (4.7) acres out of the south third of the William Daniel league in Van Zandt county, brought this suit against C. Andrade, III, et al. in form, an action of trespass to try title, also specially pleaded its title, to recover the strip of land and for injunctive relief to prevent defendants from trespassing upon same. The answer of defendants contained a general denial and plea of not guilty.

Plaintiff claims title as transferee of John W. Easterwood, to whom the defendants C. W. Carter and wife (owners of the land) executed an ordinary oil and gas lease, describing 158 acres of land "more or less"; the contention being that the strip of land in controversy is a part of and within the descriptive boundaries of the 158-acre tract, while defendants dispute this fact, contending that the strip of land is situated outside of and along the west boundary of the 158-acre tract.

The case was tried to a jury, and at the conclusion of plaintiff's evidence the court, on motion of defendants, directed a verdict in their favor. The theory on which the court directed the verdict is disclosed by language of the charge as follows: "* * * The court * *⁄ * holding that there was introduced evidence insufficient for the court and jury to overcome the course and distance called for in the field notes in the deed to the land described in plaintiff's lease, and that in the absence of proof of natural or artificial objects to overcome the course and distance mentioned in said deed, the court concluded that the plaintiff could not recover." It is evident the court did not construe the descriptive language of the lease referring to a "marked line," hereafter mentioned, as being a call for an artificial object, and accordingly rendered judgment for defendants, from which plaintiff appealed.

Defendants object, on the ground of multifariousness, to the consideration of plaintiff's first, second, and fifth grounds of error and its bill of exception No. 1 upon which the fifth ground is based.

We overrule these objections. The assignments called in question, as well as those contained in the amended brief of plaintiff

filed by permission of the court, are sufficient to call to our attention the alleged errors of the court below, and in our opinion are in substantial compliance with article 1757, R. S., as amended by the Acts of April 9, 1931, c. 45, § 1 (Vernon's Ann. Civ. St. art. 1757). See Heatley v. W. P. Ponder & Sons (Tex. Civ. App.) 40 S.W.(2d) 951. Bill of exception No. 1 was approved as correct by the court below as well as by counsel for defendants; hence the objection to it is also overruled.

■ We have for consideration the usual problem that arises when a verdict is instructed, that is, of determining 'whether there was evidence that tended to establish the contention of the losing party, for, if evidence of such nature is disclosed, we must hold that the verdict should not have been directed for defendants. This doctrine is so fundamental and universal as not to require citation of authorities.

The following facts are undisputed: That prior to the year 1869 S. M. Murphree owned title to the south third of the William Daniel league in Van Zandt county, Tex., and in July of that year caused the same to be surveyed and subdivided by Capt. Allen T. Riggs (Surveyor) into ten quarter sections; that in surveying and subdividing the land Riggs indicated the location of lines and corners by certain marks or hacks on line and bearing trees; that on December 14, 1869, S. M. Murphree and wife conveyed to their daughter, Mila Catherine McKenzie, one of these subdivisions by the following description (omitting immaterial matter): "Said lands is (are) bounded as commencing one-half a mile West of the Southeast corner of the South third of said league; thence running West with original league line one-half a mile; thence North with a marked line one-half mile; thence East one-half a mile; thence south to the place of beginning, to contain one hundred and sixty acres of land, more or less." Mila Catherine McKenzie (a feme sole) conveyed the land to defendant C. W. Carter October 25, 1917, by the same description, and on April 20, 1928, Carter and wife executed the oil and gas lease in favor of John W. Easterwood, under which plaintiff claims, describing the land as follows: "All that certain tract of land situated in the County of Van Zandt, State of Texas, and containing 158 acres more or less described as follows, towit: Being a part of the Wm. Daniel survey and fully described in deed from S. M. Murphree and wife to M. C. McKenzie, which said deed is recorded in Volume 27 page 404, Deed Records of Van Zandt County, Texas, to which reference is hereby made for a description of said land, and containing 158 acres more or less." Thus it appears that the land was described in the lease identically as described in the two preceding conveyances.

The record discloses that about the time the present controversy arose the land was surveyed and the lines traced by several surveyors, and in this connection Mr. Carter was requested to point out the corners of his land, which he did, and a line run north from his southwest corner, as thus indicated, to his northwest corner, is marked by hack line trees situated 2 or 3 feet on either side of the line, those west of the line are hacked on the east side facing the line and those east of the line are hacked in a similar manner on the west side facing the line.

In this connection the evidence tended to show that these markings were of a kind characteristic of Mr. Riggs, the surveyor who subdivided the land for Murphree in 1869, and were apparently very old, probably sixty years of age or more.

It is obvious that, if the south boundary line of the land leased by Carter to Easterwood is extended west to the point indicated by Mr. Carter as being his southwest corner, a line run north from this point between the existing hack line trees to the northwest corner pointed out by him, the strip of land in controversy will be included within the boundaries of the lease, as contended by plaintiff; however, if the south boundary line, under applicable rules of law, cannot be extended further west than the distance of one-half mile (called for in the grant) from the southeast corner of said tract (the location of which is not in controversy), a line run north from said one-half mile point will exclude the land from the lease as defendants contend should be done. Narrowing the controversy to the focal point, plaintiff contends that the following calls in the description of the land contained in the conveyances and lease, to wit: "Thence running West with original league line one-half a mile; thence North with a marked line one-half mile" should be reconstructed so as to read "thence running West with original league line one-half mile to a marked line; thence North with said marked line one-half mile," etc., whereas the contention of defendants is that the north call is not at all a call for a marked line or artificial object, but is a mere passing or descriptive call, and can be observed only for the purpose intended, that is, as indicating the course to be run, and that, when the west call along the south league line reaches the one-half mile point, it is exhausted, and must stop, since no object, either natural or artificial, is called for; therefore the call for the "marked line" in the conveyances and lease is not sufficient to overcome the call for course and distance.

■ [3-5] We cannot accept as correct the theory of appellees. That the south third of the league belonging to Mr. Murphree was surveyed and subdivided into ten 160-acre tracts in 1869 by Capt. Riggs, and the lines and corners marked by hacks and markings on line

and bearing trees, is not disputed. Within a few months (December, 1869) Mr. Murphree and wife conveyed one of these subdivisions to their daughter, Mrs. McKenzie, the west line of which calls to run north along "a marked line," the same description was used in the conveyance from Mrs. McKenzie to Carter and in the lease from Carter to Easterwood, under whom plaintiff claims. We think the call "thence North with a marked line one-half mile" is, in legal effect, a call for an artificial object. It is also undisputed that marked line trees exist along the west boundary of the tract where plaintiff contends it is located, and the evidence, as to the markings on trees and the apparent age of same, tend to prove that they were made by Capt. Riggs at the time the land was subdivided, and, if it should be so determined, it would unquestionably establish his footsteps. In our opinion, the evidence raised an issue as to whether the marked line found upon the ground was made by Capt. Riggs when the land was subdivided, and is the same referred to in the lease and conveyances as "a marked line"; if so, the south boundary line of the tract should be projected west beyond the half mile point to an intersection with same. As said by Judge Fly in Cottingham v. Seward (Tex. Civ. App.) 25 S. W. 797: "The rule is that when a marked line is called for in a grant, and that line can be identified, it will control a call for course and distance. 'The fundamental principle in all cases is to ascertain where the survey was actually made upon the ground.'" Also, see, Maddox v. Fenner, 79 Tex. 279, 15 S. W. 237; Steusoff v. Jackson, 40 Tex. Civ. App. 328, 89 S. W. 445; Goodson v. Fitzgerald, 40 Tex. Civ. App. 619, 90 S. W. 898; Stafford v. King, 30 Tex. at pages 271–273, 94 Am. Dec. 304. The rule is announced in 7 Texas Jurisprudence, p. 254, § 91, that: "It is also a question for the jury whether any or all of the lines of a survey were actually run upon the ground"— citing authorities. Other authorities in point are: Hubert v. Bartlett's Heirs, 9 Tex. 97; Bolton v. Lann, 16 Tex. 96, 112; Goodson v. Fitzgerald (Tex. Civ. App.) 135 S. W. 696, 699. Where the footsteps of the surveyor are found, all rules for the ascertainment of boundaries are satisfied, and all calls in the grant must yield to this ascertained fact. See Fulton v. Frandolig, 63 Tex. 330. We do not think our holding in this respect is in any sense contrary to or in conflict with the doctrine announced in numerous cases cited by appellee, to the effect that where the description is plain, clear, and unambiguous, parol evidence is not admissible to show that the parties intended to convey land other than that described; nor are we in conflict with the line of decisions holding that lines and boundaries of land cannot be constructed with reference to objects indicating the footsteps of the surveyor found upon the land,

but not called for in the conveyance, because in the case at bar a marked line indicating a surveyor's footsteps is found upon the ground corresponding to the line called for in the grant, and the question at issue is whether or not the line called for in the grant and the line found upon the ground are identical.

▇▇▇ Plaintiff complains of the action of the court in excluding the testimony of J. Q. Murphree, a son of S. M. Murphree, who assisted Capt. Riggs in surveying and subdividing the land in 1869, to the effect that his father employed Riggs to survey and subdivide the land and furnish descriptions of the subdivisions to enable the father to make conveyances to his children and grandchildren; and further that, after Riggs surveyed and subdivided the land, witness and two others of the children accepted from their father sums of money in lieu of land, and that in 1872 his father conveyed to Allen T. Riggs the three subdivisions that otherwise would have gone to the three accepting money in lieu thereof. The testimony of this witness was excluded on the objection that the same would be but the expression of an opinion. We do not think so. The answers would, in our opinion, have stated facts, knowledge of which the witness had ample opportunity to acquire, as he assisted in making the survey, was one of the heirs and personally interested, in that he was to receive conveyance of one of the subdivisions. In Kottwitz v. Bagby, 16 Tex. 662, Judge Wheeler said: "Where an unimpeached witness states a fact as of his own knowledge, it must be taken that he had competent means of information and knowledge of the fact, unless the contrary appears." In McCarthy v. Anaconda Copper Mining Co., 70 Mont. 309, 225 P. 391, page 395, the Supreme Court of Montana held: "With respect to opinion evidence the rule is that a witness may testify directly to a composite fact, though in a sense his testimony may be the result of his conclusion from other facts"; again the court said: "Where 'the question involves a fact clearly within the knowledge of the witness, and not the expression of an opinion upon facts proven, such question is admissible.'" In Smith v. Cram, 113 Or. 313, 230 P. 812, 815, the Supreme Court of Oregon said: "It is a fundamental rule that a witness must testify to his observation and not to his impressions. This rule does not apply when the fact in issue is the intention of the parties. A witness who is in a position to know may testify about the intention of the parties to an agreement to the same effect as to any other fact which may come to his observation." We hold therefore that the rejected evidence bore more or less relevancy to the issues being tried and was admissible.

Plaintiff complains of the action of the trial court in rejecting the testimony of R. E. Mills as to his investigation and survey of the

part of the south third of the Daniel league, surrounding and including the G. W. Carter tract; also certain deeds executed by S. M. Murphree conveying said · subdivisions, and deeds executed by his vendees conveying the lands and parts thereof, also a map prepared by the witness, all of which, plaintiff contends, would ·have shown, or tended to show, that the witness found on the ground marked lines indicated by bearing trees marked in identical manner as the line and bearing trees marking the boundaries of the G. W. Carter tract, also tended to show a substantially uniform excess in the length of lines of the subdivisions over the distances called for in the field notes of the conveyances, and tended to show a substantially uniform excess of acreage over the amount called for, corresponding to the excess in the actual length of the lines and acreage found to exist with reference to the Carter tract, and tended to establish the actual footsteps the surveyor made in making the system of surveys including the Carter tract. Defendants contend that the court did not err in excluding the evidence because the same tended to vary, contradict, add to, and destroy the plain and unambiguous calls in the description of the land contained in the lease; that the same purported to give in detail objects called for in other surveys not called for in the description in the instruments under which appellant claims title; that the testimony of the witness and the instruments, calls, and field notes were long, cumbersome, and would unnecessarily cumber the record; that the evidence was offered in bulk, the admissible (if any) with the inadmissible, therefore the court did not err in rejecting the same as a whole.

The bill of exception is quite lengthy, taking up 49 pages of the transcript, and discloses that plaintiff offered, in connection with the testimony of R. E. Mills, the surveyor, certain documentary evidence, including original deeds executed by S. M. Murphree by which he conveyed subdivisions of the survey to his children, and conveyed three of said subdivisions in a body to Allen T. Riggs, also certain junior conveyances executed by the vendees 'under these original deeds were offered; the testimony of the witness Mills being with reference to the application of the calls contained in all these instruments to the objects found upon the ground.

 We are of opinion that there is found both admissible and inadmissible evidence in the mass offered, and that the court did not abuse its discretion in rejecting the same as a whole. In M., K. & T. Ry. Co. of Texas v. Washburn (Tex. Civ. App.) 184 S. W. 580, 582, the court said: "It is true that where evidence is admitted over an objection to the same as a whole, a part of such evidence being admissible and a part not, no reversible error is committed. * * * But it is equally well settled that where evidence is offered as a whole, only a part of which is admissible, the court does not commit error in sustaining an objection to such testimony. In such case it is not the duty of the court nor of the party objecting to the same to separate the admissible from the inadmissible" —citing authorities. However, as the case will be reversed for reasons hereinbefore stated, we will indicate our opinion as to the admissible evidence included in the bulk offered. We think the deeds executed by S. M. Murphree conveying the different subdivisions surveyed by Allen T. Riggs in 1869 were admissible, also the testimony of the witness Mills as to his investigation and surveys following the calls in these conveyances and the objects found along the lines called for therein. We are dealing here with a group of surveys made at the same time and for a declared purpose, and, although the testimony may have only a remote bearing upon the issue under consideration, that is, the footsteps of the surveyor made on the west boundary of the Carter tract, yet we believe that the field notes of the surrounding subdivisions and the testimony of the witness Mills, who run the lines under the guidance of said field notes, bear somewhat upon the issue and are admissible. In the case of State v. Dayton Lumber Co. (Tex. Civ. App.) 159 S. W. 391, 395, the court was dealing with a very similar situation, and had this to say: "The field notes of surveys made 'at the same time by the same surveyor are admissible as part of the res gestæ. 'At the same time' does not mean on the same day, but that the work was continuous from day to day, and connected as a part of the series of surveys, though such work may have continued for many days, or even weeks and months." However, we do not believe the junior conveyances, that is, those executed by vendees of S. M. Murphree, were admissible, nor that the witness Mills should be permitted to testify as to his work upon the ground in connection with · any calls appearing in these junior conveyances. For the errors in excluding the testimony of the witness J. Q. Murphree, and in directing a verdict for defendants, the judgment of the court below is reversed, and the cause will be remanded for further proceedings.

Reversed and remanded.